In re the Marriage of M.A. and M.S.

M.A., Petitioner/Appellant,

v.

M.S., Defendant/Respondent.

No. ED 82018.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 9, 2004.

Michael A. Gross, James R. Dowd, Dowd & Dowd, P.C., St. Louis, MO, for appellant.

Sanford J. Boxerman, Alan Zvibleman, Capes, Sokol, Goodman & Sarachan, P.C., St. Louis, MO, for respondent.

Dudley C. Dunlop, St. Louis, MO, Guardian ad litem.

CRANE, J.

Mother appeals from the judgment of the trial court in a proceeding to modify the custody and visitation provisions of a February 21, 1995 dissolution decree. Father had filed a motion requesting the court to allow his visits with the parties' two children to be unsupervised and to change the children's custodial arrangement from sole legal custody in mother to joint legal custody. Mother moved to dismiss father's motion for unsupervised visitation and moved that father's visitation be terminated pursuant to Section 452.400.1 RSMo (2000).[1] She also filed a countermotion to modify, seeking termination of father's visitation. The trial court denied the motion to dismiss and terminate visitation. After an evidentiary hearing, the trial court granted father's request that his visitation with son no longer be supervised, but ordered the visits with daughter continue to be supervised until the parties agreed otherwise or until further order of the court. The trial court also granted father's request for joint legal custody and designated father's present wife as supervisor of his visitation.

On appeal mother contends that the trial court erred in not terminating father's visitation pursuant to section 452.400.1, in giving father unsupervised visitation of son, in

---

1. All statutory references will be to RSMo (2000) unless otherwise indicated.

declaring that supervised visitation of daughter should be eliminated after she was informed of father's sexual abuse of her as an infant and toddler, in awarding joint legal custody of son and daughter, and in ordering that father's present wife serve as supervisor of father's visitation. Father did not file a brief within the extended time granted to him and did not timely seek another extension of time in which to do so.

We reverse the trial court's denial of mother's motions seeking termination of father's visitation of daughter. We reverse the trial court's award of joint legal custody and designation of father's present wife as supervisor of his visitation, and we reverse and remand the trial court's elimination of supervised visitation of son.

### FACTUAL BACKGROUND

Mother, M.A., and father, M.S., were married in 1986. On July 6, 1990, an infant girl, R.S., was born in Peru. On July 13, 1990, an infant boy, J.S., was born in Peru. Mother and father traveled to Peru in October, 1990, to meet and adopt R.S. ("daughter") and J.S. ("son") and stayed three to four months. Daughter and son lawfully immigrated to the United States.

While in Peru, father sexually abused daughter. He thereafter abused her at different times for approximately 18 months. As a teenager, father had molested his young cousin (approximately 3 years old) in a similar manner.

Father confessed to his clergyman in 1992 that he had been molesting daughter, and told mother. After this confession, father abused daughter two more times. His clergyman referred father to a psychologist, who reported the abuse to the Division of Family Services (DFS). Father was charged with and pleaded guilty to two counts of sodomy [2] and was given a suspended imposition of sentence and placed on probation for five years. Because of the molestation of daughter, mother filed for dissolution.

A term of father's probation was that he attend counseling. He successfully completed the sex-offender program at Behavioral Science Institute (BSI) in 1999. He voluntarily sought additional counseling after the completion of the BSI program.

### PROCEDURAL BACKGROUND

Mother and father's marriage was dissolved on February 21, 1995. The dissolution decree gave mother primary legal and physical custody of son and daughter and granted father supervised visitation of son and daughter for four hours per week. The visitations were to be supervised by DFS or someone approved by DFS in advance in writing. The judgment was modified on April 21, 1999, pursuant to the parties' "Consent Agreement" on father's motion to modify, to allow father six hours a week of supervised visitation. DFS would no longer supervise the visits; the supervisors were to be selected by Marie Clark or any psychologist at the Behavioral Science Institute in accord with written criteria developed by Ms. Clark and Dr. Terrence Rohen and upon consultation with Dr. Rohen. Visitation was again modified on June 7, 2001, in advance of mother, son and daughter's relocation to New Jersey, pursuant to the parties' "Family Court Modification Agreement." This agreement allowed father to have supervised visitation once each quarter for a period not less than seven days or more than thirty days. Father's present wife, D.S., was "not to be eliminated" from the evaluation process as a supervisor.

---

**2.** Sodomy of a child is a felony violation of Chapter 566 RSMo.

Father filed his motion to modify on December 6, 2001. Mother filed a motion to dismiss father's motion and to terminate father's visitation pursuant to section 452.400.1 and Hoskins v. Box, 54 S.W.3d 736 (Mo.App.2001). Mother also filed a counter-motion to modify that sought termination of father's visitation rights. The trial court denied mother's motion to dismiss and terminate visitation on the grounds that father's motion to modify was governed by section 452.400.2, which does not contain the restrictions in section 452.400.1. The court held an evidentiary hearing on father's and mother's modification motions.

In its order and judgment, the trial court found that father had successfully completed a sexual abuse program and was therefore rehabilitated. It found that son was not at risk from father, and that it was in son's best interest to eliminate supervision of father's visitation with him. It also found that the risk father would abuse daughter in the future was low, and it was in daughter's best interest to have unsupervised visits with father, but that her visitation should remain supervised until she had been told of father's past abuse of her. It found that Ms. Clark had withdrawn from participation in the selection of supervisors for visitation because of the actions of both mother and father. It found: "Since December 2001 there has been no one available to select additional supervisors because Mother has refused to a(sic) agree to a replacement for Ms Clark" and "Mother's refusal to allow Michael Clayton to supervise has interfered with the visitation of the children by father." It also found that the other approved supervisor, Marilyn Milligan, unreasonably interfered with father's visitation.

In its order the court awarded mother and father joint legal custody, allowed fa-

ther unsupervised visitation with son, and continued to require father's visitation with daughter to be supervised "until such time as Mother and Father agree to it being unsupervised or the Court orders otherwise." The court also approved father's present wife, D.S., as a supervisor, and approved Michael Clayton as a supervisor if D.S. was not available. It set aside all previous orders governing the selection of supervisors and supervision criteria. The court also ordered that son and daughter be informed within 60 days "that Father's inappropriate contact with [daughter] was the reason that their visitation with Father has been supervised and that Father has gone through treatment and counseling for that behavior and that his treatment has been successfully completed and the Court has found that he is no longer a risk to sexually abuse them."

## DISCUSSION

First we will address the points challenging the orders concerning visitation, then the points challenging the court's award of joint legal custody, and finally the point challenging the appointment of D.S. as a supervisor.

### I. *Visitation*

A. *Applicable Visitation and Modification Statutes and Amendments*

In February, 1995, when the parties' dissolution decree was entered, Section 452.400 RSMo (1994) governed visitation by the non-custodial parent. Section 452.400.1 RSMo (1994) required the court to consider evidence of domestic violence, but allowed the court to grant visitation to an abusive parent if visitation was in the best interests of the child and the court made specific factual findings that showed the visitation arrangements made by the court best protect the child from any further harm.

Effective August, 1995, this statute was amended. A new sentence was added to section 452.400.1 that prohibited the grant of visitation to a parent not granted custody if that parent had been found guilty of, or pleaded guilty to, a felony violation of Chapter 566 RSMo, when the child was the victim, or a violation of section 568.020 RSMo when the child was a victim. Section 452.400.1 RSMo (1996 Supp.) The 1995 amendment required courts to deny visitation to non-custodial parents who had pleaded guilty to or been convicted of the sex crimes enumerated in Chapter 566, RSMo, or incest, Section 568.020, RSMo, when the child was the victim. Section 452.400.1 RSMo (1996 Supp.); Hoskins v. Box, 54 S.W.3d 736, 738 (Mo.App.2001). This section was again amended in 1998 with respect to the Chapter 568 offenses to which it applied. Section 452.400.1.

Modification of a visitation provision in a dissolution decree is governed by section 452.400.2. This section allows a court to modify a visitation provision after considering only the child's best interests, a less rigorous standard for modification than that required for custody. Turley v. Turley, 5 S.W.3d 162, 164 (Mo. banc 1999); Stirling v. Maxwell, 45 S.W.3d 914, 916 (Mo.App.2001). It also sets out the parameters for restricting a non-custodial parent's visitation rights. Section 452.400.2 has not been amended and contained the same language at the time the motion to modify was filed as it did when the dissolution action was filed.

### B. *Failure to Terminate Visitation*

■■■ For her first point mother contends that the trial court erred in denying her motions and not terminating father's continued visitation, because section 452.400.1 required the entry of an order terminating father's visitation rights. The construction of a statute is a matter of law that we review *de novo*. State v. Repro-

ductive Health Services, 97 S.W.3d 54, 56 (Mo.App.2002).

Section 452.400.1 provides in part:

The court shall not grant visitation to the parent not granted custody if such parent has been found guilty of or pled guilty to a felony violation of chapter 566, RSMo, when the child was the victim, or a violation of chapter 568, RSMo, except for section 568.040, RSMo, when the child was the victim or an offense committed in another state, when the child is the victim, that would be a felony violation of chapter 566, RSMo, or chapter 568, RSMo, except for section 568.040, RSMo, if committed in Missouri.

Section 452.400.1 prohibits the trial court from granting visitation to certain parents not granted custody. Mother argues that this section requires the court to terminate visitation previously granted, and can properly be considered on a motion to modify filed pursuant to section 452.400.2, citing *Hoskins,* 54 S.W.3d 736.

In *Hoskins,* the trial court denied visitation to a father who had pleaded guilty to felony child abuse of his youngest son in 1993. The terms of his probation prohibited him from any contact with his children. The father's marriage was dissolved in 1994, and the father was precluded from visitation with his children by the terms of the decree. The father did not seek visitation until after the 1998 amendments to section 452.400.1 had taken effect, which amendments required a court to deny visitation to a non-custodial parent who had pleaded guilty to or been convicted of felony child abuse. The father filed a motion to modify and the mother filed a motion to dismiss for failure to state a claim. The trial court dismissed the father's motion to modify. The court of appeals affirmed on the grounds that the 1998 amendments to

section 452.400.1, which were in effect when the motion to modify was filed, prohibited the court from granting him visitation.

*Hoskins* holds that the ban on visitation contained in section 452.400.1 applies to modification proceedings. In this case mother had filed a motion to terminate visitation previously granted pursuant to section 452.400.1 and a motion to modify pursuant to section 452.400.2 seeking termination by application of section 452.400.1. Section 452.400.1 applies whether the modification sought is to increase visitation rights or decrease visitation rights.

The version of section 452.400.1 that was in effect when the motion to modify was filed prohibits the award of visitation to a non-custodial parent of the child who was the victim. This statute clearly precludes father's visitation of daughter since she was the victim of father's sodomy offense. However, section 452.400.1 does not clearly preclude visitation with son, since son was not the child who was abused.

Point one is denied with respect to son. Point one is granted with respect to daughter and renders moot mother's remaining points with respect to daughter.

## C. *Award of Unsupervised Visitation*

Mother next asserts that the trial court erred in awarding father unsupervised visitation of son pursuant to section 452.400.2. Section 452.400.2 allows a court to modify an order granting supervised visitation because of allegations of abuse and allows unsupervised visitation if the modification would serve the child's best interests and a "showing of proof of treatment and rehabilitation" has been made. The trial court found father was rehabilitated, that son was not at risk for abuse by father, and that it was in son's best interest that supervision of father's visitation

with him be eliminated. It ordered immediate unsupervised visitation of son. The trial court ordered that son be told of the abuse within sixty days of entry of its order.

The order giving father immediate unsupervised visitation with son was not supported by substantial evidence. The expert witnesses, Dr. Dean Rosen and Dr. Rohen, both testified that son should be given counseling to prepare him for being told about father's abuse of daughter. The Guardian ad Litem urged the court not to remove supervision until son was counseled and brought to the point where he could deal with the information.

In addition, it was impossible for the trial court to know, at the time it ordered unsupervised visitation, what son's best interests would be with respect to unsupervised visitation after he was told of the abuse. The trial court erred in ordering immediate elimination of supervised visitation without first requiring the parties to come back before the court for a reevaluation of the situation after son was told of the abuse. *See* Lipic v. Lipic, 103 S.W.3d 144, 148 (Mo.App.2003); J.L.S. v. D.K.S., 943 S.W.2d 766, 772–73 (Mo.App.1997). In *J.L.S.*, we held, "Clearly, in the best interest of the children, a reevaluation of all parties must occur before the boys are exposed to a situation that father's experts deemed as harmful to them if they have not been correctly prepared." *Id.* at 773.

The trial court erred in ordering elimination of supervision of father's visitation with son without ordering the recommended counseling or ordering an evaluation of son's best interests after counseling and after being informed of father's abuse of daughter. Point two is granted.

## II. *Joint Legal Custody*

In points three and four, mother asserts that the trial court erred in award-

ing joint legal custody of son and daughter to father because 1) Section 452.375.3 prohibits a court from awarding custody to a parent who has been convicted of or pleaded guilty to Chapter 566 felonies in which the child was the victim[3], and 2) the finding was against the weight of the evidence. We do not need to reach the argument relating to section 452.375.3, because the order granting joint legal custody is clearly not supported by substantial evidence.

"Joint legal custody" means that "the parents share the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of the child, and, unless allocated, apportioned or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority...." Section 452.375.1(2). A commonality of beliefs concerning parental decisions and the parties' ability to function as a parental unit in making those decisions are important considerations in determining whether joint legal custody is in the child's best interests. McCauley v. Schenkel, 977 S.W.2d 45, 50 (Mo.App. 1998). This commonality of beliefs is "imperative to the best interests of the child in a joint custody arrangement." Mehra v. Mehra, 819 S.W.2d 351, 353 (Mo. banc 1991). Joint legal custody is only appropriate when the parents "demonstrate the willingness and ability to share the rights and responsibilities of raising their children." McCauley, 977 S.W.2d at 50 (quoting Leone v. Leone, 917 S.W.2d 608, 614 (Mo.App.1996)). If the parties are unable to communicate or cooperate and cannot make shared decisions concerning their children's welfare, joint legal custody is inappropriate. McCauley, 977 S.W.2d at 50 (quoting Leone, 917 S.W.2d at 614). Joint legal custody is not always or necessarily inappropriate merely because there is some level of personal tension and hostility between the former spouses, "*provided that* there is substantial evidence that despite this acrimony the parties nonetheless have the ability and willingness to fundamentally cooperate in making decisions concerning their child's upbringing." *Id.* at 50–51; *see also* Shockley v. Shockley, 882 S.W.2d 775, 776–77 (Mo.App.1994).

An order granting legal joint custody must be based on substantial evidence that fairly supports the conclusion that the parents have a commonality of beliefs concerning parental decisions, as well as the willingness and ability to function as a unit in making those decisions. McCauley, 977 S.W.2d at 51; Burkhart v. Burkhart, 876 S.W.2d 675, 680 (Mo.App. W.D.1994). The trial court found:

> that it is in the best interest of the children that Mother and Father shall exercise joint legal custody as set forth in the attached Parenting Plan. The children's primary physical custody shall remain with Mother. Mother has failed to confer with Father on major issues, including medical decisions, as set forth in the Parenting Plan.

It made no other findings on this issue.

Father testified that he thought that he and mother could "jointly make decisions regarding the kids' best welfare and interest, education and religion, medi-

---

**3.** Section 452.375 was also amended after the parties' dissolution decree was entered by the addition of a new subsection 3 in 1995 that prohibited an award of custody to a parent who had been found guilty of, or pleaded guilty to, a felony violation of Chapter 566 RSMo, when the child was the victim, or a violation of section 568.020 RSMo, when the child was a victim. Section 452.375.3 RSMo (1996 Supp.). Subsection 3 was again amended in 1998 with respect to the Chapter 568 offenses to which it applied. Section 452.375.3.

cal decisions, schooling." There was no evidence that father and mother have a commonality of beliefs concerning parental decisions, and a willingness, as well as an ability, to function as a unit in making those decisions. If the record is devoid of such evidence, it is error for the trial court to award joint legal custody. *McCauley*, 977 S.W.2d at 51–52; *J.L.S.*, 943 S.W.2d at 774. The record in the trial court does not support the conclusion that mother and father can communicate, cooperate, and work together in the exercise of decision-making rights and responsibilities concerning their child. The order granting joint legal custody is not supported by substantial evidence. Point four is granted.

III. *Approval of D.S. as Supervisor of Father's Visitation*

■ For her last point mother contends that the trial court erred in approving D.S., father's present wife, as supervisor of father's visitation because no evidence was adduced regarding D.S.'s training, capability, character, or beliefs. In his motion to modify, father did not request that D.S. be appointed a supervisor, and father did not make any such request at the hearing. At the hearing, the only evidence about D.S. was father's testimony that D.S. would take good care of son and daughter if they were visiting his home and he was not there. Mother testified that she objected to D.S. being a supervisor. In its order and judgment, the trial court made no findings referable to D.S.

In the Family Court Modification Agreement dated June 7, 2001, the parties agreed that "[Father's] present wife [D.S.] shall not be eliminated from the evaluation process as a supervisor regarding [father's] supervised visitation as above set forth." The record on appeal contains no evidence that D.S. was evaluated as a su-

pervisor or what the result of that evaluation was.

■ A judgment is void to the extent that it grants relief beyond what was requested in the pleadings. *Beckwith*, 32 S.W.3d at 665. Because no pleadings were filed requesting that D.S. be appointed a supervisor of visitation, and no evidence was presented of her qualifications to supervise visitation, the order appointed her to be a supervisor is void. Point five is granted.

*Conclusion*

The judgment is reversed with respect to the 1) denial of the motions to terminate visitation with respect to daughter, 2) the award of joint legal custody, and 3) designation of D.S. as supervisor of father's visitation. It is reversed and remanded with respect to the elimination of supervised visitation with son, with directions to proceed in accordance with this opinion. In all other respects the judgment is affirmed.

GLENN A. NORTON, P.J. and MARY K. HOFF, J. concur.