**In re the MARRIAGE OF Vicki Sue SUTTON and Geoffrey Lyle Sutton.**

**Vicki Sue Sutton n/k/a Curriston, Petitioner/Appellant,**

v.

**Geoffrey Lyle Sutton, Respondent/Respondent.**

**No. ED 87572.**

Missouri Court of Appeals, Eastern District, Division One.

Sept. 25, 2007.

Joseph J. Porzenski, LLC, Turken & Porzenski, LLC, St. Charles, MO, for appellant.

Geoffrey L. Sutton, St. Charles, MO, pro se.

KATHIANNE KNAUP CRANE, Presiding Judge.

Mother appeals from the judgment of the trial court modifying the custody and visitation provisions of a March 25, 1999 dissolution decree. In its judgment as finally amended, the trial court denied each party's request for sole legal custody and entered an order continuing joint legal custody. It denied mother's request for statutory interest on father's unpaid child support. It also modified the parenting plan to prohibit each party's telephone access to the children while they were in the other party's custody. On appeal, mother contends that the trial court erred in making each of these determinations.[1] We reverse the trial court's award of joint legal custody and remand with instructions. In all other respects we affirm.

---

1. Father has not filed a brief.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother, Vicki Sue Sutton, and father, Geoffrey Lyle Sutton, were married in 1981. Two children were born of the marriage, on May 26, 1990, and February 26, 1994.

■ The parties' marriage was dissolved on March 25, 1999. The decree incorporated the parties' agreement that mother would have "primary physical custody,"[2] and the parties would share joint legal custody. The decree also ordered father to pay child support in the amount of $1,205.59 per month.

In 2003, father filed a motion to modify in which he sought an award of joint physical custody and other relief. Mother filed a cross-motion for contempt in which she sought, in addition to other relief, interest on father's past-due child support. She also filed a cross-motion to modify, seeking sole legal custody, a modification of father's visitation, and other relief. During the evidentiary hearing, father amended his written motion to request sole legal custody of the children.

In its judgment of modification, as finally amended, the trial court ordered continued joint physical and legal custody and denied each party's motion for sole legal custody. The trial court also changed the parties' parenting plan to remove each parent's telephone access to the children while they were with the other parent. The trial court denied mother's request for statutory interest on father's past-due child support because there was insufficient evidence that would provide a basis for calculating the interest.

## DISCUSSION

### I. Joint Legal Custody

■ In her first point, mother contends the trial court erred in denying her request for sole legal custody because substantial evidence did not support the judgment. She argues that the evidence supported a conclusion that the parties were unable to effectively communicate and cooperate with one another about child-rearing matters, and that continued joint legal custody was contrary to the children's best interests.

■ Section 452.410 RSMo (2000) provides that a court may modify a prior child custody decree if it finds, "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." We review the trial court's ruling on a motion to modify child custody pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain that judgment unless there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Leazer v. Leazer*, 119 S.W.3d 597, 599 (Mo.App.2003). We will not set aside a trial court's judgment on child custody unless we firmly believe that the decree is wrong and that the child's welfare requires another disposition. *McCauley v. Schenkel*, 977 S.W.2d 45, 50 (Mo.App.1998).

2. Missouri statutes do not provide for an award of "primary custody." Section 452.375.1(1) RSMo (2000) defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." The statute does not use the term "primary physical custody." When the court orders the child to be in the care of each parent for significant periods, the award is actually one of joint physical custody. *LaRocca v. LaRocca*, 135 S.W.3d 522, 526 (Mo.App.2004).

*Applicable Law*

The statute defines "joint legal custody" as the situation in which "the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." Section 452.375.1(2) RSMo (2000). In determining whether joint legal custody is in the child's best interests, we consider the parties' commonality of beliefs concerning parental decisions, the parties' ability to function as a parental unit in making those decisions, and the parties' demonstrated "willingness and ability to share the rights and responsibilities of raising their children." In re Marriage of M.A. and M.S., 149 S.W.3d 562, 569 (Mo.App.2004); McCauley, 977 S.W.2d at 50 (quoting Leone v. Leone, 917 S.W.2d 608, 614 (Mo. App.1996)). "An order granting joint legal custody must be based on substantial evidence that fairly supports the conclusion that the parties have a commonality of beliefs concerning parental decisions, as well as the willingness and ability to function as a unit in making those decisions." M.A., 149 S.W.3d at 569; see also McCauley, 977 S.W.2d at 51; Shockley v. Shockley, 882 S.W.2d 775, 776 (Mo.App.1994); Burkhart v. Burkhart, 876 S.W.2d 675, 680 (Mo.App.1994). The parties' inability to communicate, cooperate, and make shared decisions concerning their children's welfare makes joint legal custody inappropriate, and a breakdown of parental communication and cooperation is "sufficient, in and of itself, to constitute a change in circumstances which can afford the basis for modifying a prior decree." McCauley, 977 S.W.2d at 50; see also Hollins v. Hollins, 13 S.W.3d 669, 672 (Mo.App.2000). If there is no substantial evidence in the record that the parties have a commonality of beliefs concerning parental decisions and the willingness and ability to function as a unit in making those decisions, a trial court's award of joint legal custody must be reversed. Shockley, 882 S.W.2d at 776–77; Burkhart, 876 S.W.2d at 680.

*The Trial Court's Findings*

With these principles in mind, we examine the trial court's findings and orders that bear on these legal principles. In its original judgment, which was incorporated into the final judgment, the trial court explained its decision to deny sole legal custody:

> Should the court award sole custody to either party, the parties' history with each other and with the children shows that the parent not awarded custody will no longer have the required frequent, continuing and meaningful contact with the children. With some changes in the temporary custody arrangement and some specific direction to the parties, the court finds that it is in the children's best interests to award joint legal and physical custody.

The court found that "[t]he children can get along well with both parents, if the parents will refrain from criticizing each other in the children's presence and cease subjecting the children to the parent's bickering." It found that "[e]ach parent, given sufficiently detailed orders from the court, will allow the children to have frequent, continuing and meaningful contact with the other parent." The court proceeded to find:

> Much of the controversy between Husband and Wife results from arguments and other oral exchanges that occur when Husband gets the children for his custody periods at Wife's home, exacerbated by Husband's and Wife's husband's unwillingness or inability to

engage in civil discourse. As an example, Wife and her husband prohibit Husband from coming onto the driveway at Wife's home to get the children, with the result that the children must walk (or run in bad weather) a considerable distance from the house to Husband's car. Consequently, the court will modify the Parenting Plan to require Wife to provide the children's transportation to and from Husband's home for Husband's custody periods.

The court next found that the "parties' ability to be joint legal custodians of the children will be abetted if the parties cease speaking to each other. Therefore, the court will require that each of them use a facsimile telecopier ('fax machine') as their sole method of communication." The court also found that "[e]ach party had frequently made decisions about the children without notifying the other party" and had "failed to give the other party information about out-of-town trips." In addition, the court found that "[t]he parties' inability to interact with each other without acrimony and without concealing that acrimony from their children justified the appointment of the guardian ad litem." In ruling on the parties' motion to amend the original judgment, the trial court again explained its decision to continue joint legal custody:

> "The legislature has expressed a public policy in favor of allowing children to have 'frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage.' Section 452.375.4. This has been interpreted as a preference for joint legal custody." *Dunkle v. Dunkle,* 158 S.W.3d 823 (Mo.App. E.D. 2005). The court is persuaded that an award of sole legal custody to either party will result in the other party's having little or no meaningful contact with the parties' children. Although the parties' past communications have been

less than satisfactory and have not been in the children's best interests, the court holds some expectation that requiring future communication between the parties to be limited to written correspondence through a facsimile telecopier will reduce the parties' antagonism toward each other and confine their discourse to matters directly related to the best interests of the children.

*Analysis*

As this last ruling makes clear, the trial court was strongly influenced by the preference for joint custody expressed in section 452.375.4 RSMo (2000). In *Margolin v. Margolin,* 796 S.W.2d 38, 49 (Mo.App. 1990), the court thoroughly analyzed this preference in the context of the statute and concluded that this legislative preference does not contemplate "a forced joint custody in order to induce the parents to find a common ground." *Id.* Rather, the court held that it is a preference "in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage." *Id.; see also McCauley,* 977 S.W.2d at 51; *Burkhart,* 876 S.W.2d at 680. This preference "is simply a legislative recognition that a functioning parental unit is most likely to be beneficial to a child." *McCauley,* 977 S.W.2d at 51 (citing *Luther v. Vogel,* 863 S.W.2d 902, 904 (Mo.App.1993)).

In *McCauley,* we reversed an award of continued joint legal custody when there was evidence that the parties were engaged in constant, ongoing, severe tension and bickering, could not speak to each other civilly on the telephone, communicated only in writing, and could not set aside their personal acrimony in making important decisions about their child's education. *McCauley,* 977 S.W.2d at 51. Further, all custody exchanges had to take place at the

courthouse door. *Id.* We pointed out that the court's finding that the breakdown in communication and cooperation was of such magnitude that it required this order governing custody exchanges was not consistent with a finding that the parties could jointly make decisions about their children's health, education, and welfare. *McCauley,* 977 S.W.2d at 51. We found that the record did not support a conclusion that the parties could communicate, cooperate, and work together in the exercise of their decision-making rights and responsibilities towards their children. *Id.* at 52.

In this case, the trial court's factual findings on the parties' inability to interact with each other without acrimony, their unwillingness or inability to engage in civil discourse, their failure to make joint decisions about the children, their failure to notify each other about decisions that were made, and their subjection of the children to their bickering and their criticism of each other were supported by substantial evidence in the record. There was evidence the parties bickered constantly and criticized each other in the children's presence; had great difficulty in communicating with each other; were unwilling or unable to engage in civil discourse, either on the telephone or in person; did not function as a unit; and had not been able to work together to make joint decisions about the children's education or medical treatment. In fact, they took opposite positions when confronted with the children's educational and medical issues that required decisions.

In his statement to the court, the Guardian Ad Litem summarized the situation and recommended sole legal custody:

> The parties have not had a workable, constructive, cooperative relationship for a long time. I think the evidence showed that these folks cannot get along. In fact, I think there's some evidence to the fact that they virtually don't even speak to each other. I think one of the litigants indicated that they don't want to speak to the other.
>
> The situation between these two parents, as well as what happens during the child exchanges, is not only interfering with the children's schoolwork, but it's obviously very stressful to these children. I don't know how we can fix that, because to fix a lot of that the parents are going to have to cooperate in order with what's happened.
>
> . . . .
>
> Based on what I'm hearing today, I don't think that a change in the physical custodian is warranted, and I think that the continuation of joint legal custody will just create tremendous frustration.

In this case, the evidence did not demonstrate that the parties had a commonality of beliefs concerning parental decisions, a willingness to cooperate, or an ability and professed desire to deal with each other on parenting issues. *Compare Luther v. Vogel,* 863 S.W.2d 902, 904 (Mo.App.1993). The court made no specific finding that the parties could function as a parental unit, except that their ability to do so would be aided if they ceased speaking to each other and communicated only by fax machine. The trial court's orders were designed to force the parties to cooperate in order to maintain joint legal custody, a result that *Margolin* and its progeny have held is not contemplated by section 452.375.4.

The trial court's findings and the remedies it felt compelled to order to cause the parties to change their behavior independently demonstrate a breakdown of parental cooperation and communication that was inconsistent with an award of joint legal custody. That the court ordered the parties to communicate by fax, because they could communicate no other way, not

only shows a breakdown of communication, but also is not a viable means of parental communication. *See Hollins,* 13 S.W.3d at 672; *McCauley,* 977 S.W.2d at 51.

The record contains no basis for a conclusion that the parties were able to function as a unit in making parental decisions about the children's health, education, and welfare. Because the trial court's award of joint legal custody is not supported by substantial evidence, we must reverse the judgment and remand to the trial court to award sole legal custody to that party according to the best interests of the children.

## II. *Statutory Interest*

■ In her second point, mother contends that the trial court erred in refusing to award her statutory interest on father's child support arrears because, under section 454.520 RSMo (2000), an assessment of interest for unpaid child support is mandatory.

■ Section 454.520.3 provides as follows:

All delinquent child support and maintenance payments which accrue based upon judgments of courts of this state entered on or after September 1, 1982, shall draw interest at the rate of one percent per month.

Section 454.520 makes assessment of interest for unpaid child support mandatory. *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 396 (Mo. banc 2001); *Morgan v. McBee,* 174 S.W.3d 640, 644 (Mo.App.2005). However, subsection 5 of that statute provides that "[a]s a condition precedent to execution for interest on delinquent child support or maintenance payments," the party seeking interest must present to the circuit clerk an affidavit "setting forth the payment history of the obligor under the judgment or order, together with a state-

ment which details the computation of the interest claimed to be due and owing." Section 454.520.5. A party seeking to collect delinquent interest "can proceed under section 454.520.5 by filing the required affidavit or, in the alternative, by filing a motion to construe and enforce the judgment." *Bohac v. Akbani,* 29 S.W.3d 407, 414 (Mo.App.2000); *In re Marriage of Overhulser,* 962 S.W.2d 951, 953 (Mo.App. 1998). If the party seeking interest fails to file either the statutory affidavit or a motion to construe and enforce the judgment, a court has no power, in rendering a judgment on a motion to modify, to determine and award interest on past due support. *Overhulser,* 962 S.W.2d at 953.

Here, the record reflects that mother did not file an affidavit pursuant to section 454.520.5 or a motion to construe and enforce the judgment. As a result, the trial court did not err in refusing to grant interest on father's child support arrears to mother. Point two is denied.

## III. *Telephone Access*

■ In her final point, mother asserts the trial court erred by eliminating all telephone access to the children, because, under section 452.310.7 RSMo (2000), all parenting plans must include appropriate times for telephone access to the children. Mother reasons that because the trial court's modified parenting plan eliminated her telephone access to the children while at father's house, and *vice versa,* the judgment failed to contain all of the prerequisites for a parenting plan required by sections 452.375.9 RSMo (2000) and 452.310.7.

Section 452.375.9 provides:

Any judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310. Such plan may be a parenting plan submitted

by the parties pursuant to section 452.310 or, in the absence thereof, a plan determined by the court, but in all cases, the custody plan approved and ordered by the court shall be in the court's discretion and shall be in the best interest of the child.

Section 452.310.7 requires that a proposed parenting plan "shall set forth the arrangements ... in the best interest of the minor children and shall include ... [a]ppropriate times for telephone access." Section 452.310.7(g).

In its judgment, the trial court found that "[d]isputes between the parties about telephone access to the children from one party while the children are in the other party's custody" were an obstacle to successful joint custody. The court found "no reason why a parent needs to have telephone contact with the children while the children are with the other parent" and therefore, ordered that there should be no such telephone communication. It specified that in emergency situations, "the parties can communicate with the children by [fax]."

The judgment meets the statutory requirements of sections 452.310.7 and 452.375.9, because it sets out the arrangements that the trial court believes to be in the best interests of the children. *See* section 452.310.7. Mother has not provided any authority supporting the proposition that section 452.310.7 requires a parent to have telephone access to a minor child when the child is in the custody of the other parent. The trial court made specific finding that ending the acrimony over telephone access is in the best interest of the children. Accordingly, the trial court did not err in eliminating each parent's telephone access to the children while in the custody of the other parent. Point three is denied.

*Conclusion*

That part of the judgment of the trial court awarding continued joint legal custody is reversed in part and remanded with instructions to make an award of sole legal custody to one of the parties in accord with the children's best interests. The court may make any other changes in its judgment, including the parenting plan, to make the remainder of the judgment consistent with the award of sole legal custody and the best interest of the children. In all other respects, the judgment is affirmed.

ROBERT G. DOWD, JR., J. and KENNETH M. ROMINES, J., concur.