

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| SCOT A. FOWLER | ) | ED103269 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 2101FC-02864-03 |
| | ) | |
| MELISSA MURPHY FOWLER, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Appellant. | ) | FILED: September 6, 2016 |

## Introduction

Melissa Murphy Fowler (Mother) appeals the judgment of the trial court granting Scot A. Fowler's (Father) action for modification of child support. Mother asserts errors in the trial court's grant of unsupervised visitation, modification of legal custody, reliance on stale evidence in its custody determination, award of the dependent child tax exemption to both parents in alternating years, failure to attach a Form 14 to the judgment, and grant of attorney's fees. We affirm in part and reverse in part, and we remand for the limited purpose of recalculating child support.

## Background

The parties married in 1998 and had one child, C.F., born in 2000. The marriage was dissolved in 2002. The dissolution judgment granted Mother sole legal and primary physical custody of C.F., ordered Father to pay $989 per month in child support, and awarded Father visitation and temporary custody. In 2003, Mother filed a motion to modify custody, alleging that

Father had sexually abused C.F.[1] In 2005, Father consented to have his visitation with C.F. supervised at all times by Laura Milsk (Milsk), Father's then-girlfriend and current wife, or Marilyn Fowler, Father's mother. In accordance with the parties' agreement, the court entered the consent judgment without a trial modifying the dissolution judgment to grant Mother sole legal and physical custody. The modification judgment stated that it "approved and ordered" the attached parenting plan, which contained the parties' agreement for supervised custody; however, the modification judgment and its exhibits contained no reference to Father's alleged abuse. The modification judgment provided that although Mother had sole legal custody, she should confer with Father before making final decisions regarding schools and extra-curricular activities, and before making final decisions regarding non-emergency medical treatment. As well, the modification judgment stated that each parent shall be entitled to records from the other or a third party pertaining to C.F.'s medical and school records.

In 2011, Father filed a motion to modify, seeking sole legal custody[2] and unsupervised custody. Mother filed a motion to dismiss on the grounds that Father had not alleged or proved he had received treatment and had been rehabilitated in compliance with Section 452.400.2(3), RSMo. (2000).[3] The trial court held a trial on the Section. 452.400.2(3) issue, at which the following evidence was adduced.

Father testified that he had never sexually abused C.F., and he stated, for support, that although there had been eleven hotline calls made against him during the pendency of Mother's 2003 motion to modify, none of the allegations of abuse were ever substantiated, and although the

---

[1] The record submitted by Appellant does not contain a copy of Mother's 2003 motion to modify, but Father testified that the motion to modify contained allegations of abuse.

[2] In his motion to modify, Father also sought sole physical custody; however, at trial he testified he was not seeking sole physical custody but unsupervised custody and expanded visitation in the summer to three 14-day periods.

[3] Further statutory references are to RSMo. (cum. sup. 2013) unless otherwise indicated.

police investigated the allegations twice, he was never arrested or charged. Nevertheless, he stated that he settled Mother's 2003 motion to modify by agreeing to supervised visitation, because he could not afford to continue the legal battle and also to protect himself from continuing allegations of abuse. Since 2005, he had received mental-health treatment from a variety of therapists about the stress and anger stemming from Mother's allegations against him, and he believed he had been rehabilitated from those emotions. Dr. Daniel Levin, a clinical psychologist specializing in evaluations of cases of child abuse, performed an evaluation of Father in 2013. Dr. Levin opined that "one cannot be rehabilitated from something that one hasn't done," and he concluded that Father could not be—and did not need to be—rehabilitated, because Father had done nothing from which to be rehabilitated.

After the trial, the trial court found that when a judgment imposes supervised visitation following an allegation of abuse of the child but the allegation is not supported by a trial court finding or an admission by the parent of abuse, a trial court may modify the judgment without proof of treatment and rehabilitation of the parent. The trial court then in July of 2014 held a trial on the remaining issues, at which the following evidence was adduced, as relevant to the issues raised on appeal, viewed in a light most favorable to the judgment.[4]

Dr. Maureen Taylor, a counselor who consults with Children's Home Society, testified that she met with C.F., then age 3, in 2003-2004 and concluded the child had been sexually abused by Father. Dr. Catherine Hasler, a clinical psychologist and C.F.'s current therapist, testified that C.F. believes she was sexually abused by Father.

Dr. Margaret Rissman, a child psychologist, testified that she treated C.F. from 2005 to 2008 when she was five to eight years old, as well as Mother and Father. Dr. Rissman testified to

---

[4] Ivie v. Smith, 439 S.W.3d 189, 200 (Mo. banc 2014) (when reviewing trial court's judgment under substantial-evidence standard, view evidence in light most favorable to judgment).

3

the following. C.F. was afraid of Mother's anger, especially about breaking the rules Mother had imposed on Father's visitation, including what clothes to wear, what children C.F. could play with, what types of movies to see, and a ban on swimming in Father's custody. Dr. Rissman was not surprised C.F. believes Father sexually abused her, because she had "lived most of her life in an environment in which her father ha[d] been vilified as a terrible person" by Mother and Mother's family. Dr. Rissman stated that in her experience Mother was "openly manipulative," and while truly Mother believed Father had sexually abused C.F., Mother also "needed for [C.F.] to not only have only the merest relationship with her father, but no relationship with her stepmother, who she insisted be called the supervisor and not her stepmother." Dr. Rissman stated that based on her exposure to the family in therapy, she did not believe Father had sexually abused C.F., and that she could see no need for supervised visitation.

Father testified that Mother has not conferred with him regarding where to send C.F. to school or in which extra-curricular activities she would participate. He believed different schools would have been better choices, but Mother overruled his suggestions. Moreover, when C.F. attended St. Mary Magdalen School in 2006, Mother requested that Father not be—and he was not—listed in the school directory. Mother switched C.F. from St. Mary Magdalen to St. Clare of Assisi in the middle of the school year without telling Father, and again Father was not listed in that school directory. When Mother enrolled C.F. in Barat Academy for high school, she did not list Father on the enrollment information. When Father requested the contact information for C.F.'s coaches, Mother refused that information, saying Father could get any information from her. When Father tried to contact the coaches directly for various schedules, he was denied the information. Although Father has requested that Mother provide him with a copy of C.F.'s insurance card, Mother has refused. Father stated that if he received sole legal custody, he would

4

confer with Mother before making decisions and would keep C.F. in the school where she was currently enrolled for the remainder of the school year, but after that, it would depend on his finances. As well, Father had no intention to change C.F.'s extracurricular activities.

Mother testified that she did consult with Father on her school choices for C.F. Mother denied telling C.F. Father had sexually abused her, denied having a rule that C.F. could only wear certain clothes at Father's home, denied telling school personnel or coaches not to talk to Father, denied failing to include Father's information on Barat Academy's enrollment form, and denied calling Milsk "the supervisor"—immediately after entering an exhibit in which Mother referred to Milsk as "the supervisor" rather than by her name. Mother agreed that supervised visitation was no longer necessary. C.F. also testified, and we will recite her testimony only as necessary in the points on appeal.

In March of 2015, the trial court entered its 55-page judgment in which it (1) awarded Father sole legal custody of C.F., (2) awarded Mother and Father joint physical custody, (3) ordered Father to pay to Mother $535 each month for child support, calculated "in accordance with, and pursuant to, the Missouri Child Support Guidelines (Rule 88.01)," (4) ordered Father to provide medical insurance for C.F., (5) granted Father the right to claim C.F. as an exemption for federal and state income tax purposes in 2015 and succeeding years, and (6) ordered Mother to pay $15,000 towards Father's attorney's fees. The trial court later modified the judgment to grant Mother and Father the tax exemption in alternating years, after again stating that the child support amount had been determined in accordance with Rule 88.01.

In support of its change of legal custody, the trial court concluded that Mother and Father were unable to communicate and that Mother "places her own selfish interests ahead of the best interests of the minor child" to an extent that called her judgment into question, thus requiring

Father to be the residential parent making decisions for C.F.'s health and education. The court further found that Mother's efforts to alienate C.F. from Father violated Mother's obligations under the dissolution judgment and were not in C.F.'s best interests. As for Father's request for unsupervised visitation, the trial court found that unsupervised visitation would not endanger C.F.'s physical health nor impair her emotional development. Last, the court found that although both parties had sufficient funds to pay his or her own attorney's fees, Mother's repeated interference with Father's relationship with C.F. and "unrelenting effort to alienate the minor child" from Father caused him to incur unnecessary attorney's fees. This appeal follows.

## Discussion

### Point I

In her first point on appeal, Mother argues that the trial court erred in awarding Father unsupervised custody of C.F. without proof that Father had received treatment and was rehabilitated, as required in Section 452.400.2(3). We disagree.

This Court will uphold the trial court's judgment unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In matters concerning visitation, we give great deference to the trial court's decisions. McDaniel v. McDaniel, 982 S.W.2d 729, 731 (Mo. App. E.D. 1998). Statutory interpretation is a question of law that we review *de novo*. In re L.M., 488 S.W.3d 210, 214 (Mo. App. E.D. 2016).

Here, the original dissolution judgment awarded unsupervised visitation to Father. Three years later, the parties consented to a modification of the dissolution judgment, placing restrictions on Father's visitation in the form of supervised visitation. Father now seeks removal of the supervised visitation. The trial court allowed removal of the supervision, over Mother's objections

6

that Father failed to comply with Section 452.400.2(3), which requires that, after a court has previously ordered supervised visitation "because of allegations of abuse," the party seeking change must show "proof of treatment and rehabilitation" before a court can order unsupervised visitation. The question for this Court on appeal is whether Section 452.400.2(3) applies when the order for supervised visitation was by consent of the parties and without a full evidentiary hearing on the merits or an admission of abuse by the party. We find that it does not.

Although when looking at Section 452.400.2(3) in isolation, it appears the statute prohibits a trial court from modifying supervised visitation to unsupervised without a showing of treatment and rehabilitation; however, when viewed in the context of the entire statute, our analysis is more complicated. We do not interpret statutory language in a vacuum, but rather, in the context of the whole statute, considering the purpose of the entire act. Martinez v. State, 24 S.W.3d 10, 18 (Mo. App. E.D. 2000) ("fundamental rule of construction that one part of a statute should not be read in isolation from the context of the whole act"). Furthermore, we presume the legislature is aware of the state of the law when it enacts a statute. In the Matter of Nocita, 914 S.W.2d 358, 359 (Mo. banc 1996).

Here, Section 452.400.1(1) provides that the non-custodial parent is entitled to reasonable visitation "unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Further, Section 452.400.2(1) provides that the court "shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." It is in the context of these rigorous prerequisites that Section 452.400.2(3) then provides that once a trial court has restricted the non-custodial parent's visitation rights due to allegations of abuse, the non-custodial parent must prove treatment and rehabilitation to have the restrictions lifted. The interest

7

of a parent to be involved in the care, custody, and control of his or her child is a constitutionally protected fundamental right that cannot be infringed upon by the courts without due process of law. See In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004).

The 2005 modification judgment here placed a restriction upon Father's visitation by ordering supervised visitation. Although the parties agreed to supervision, the trial court itself could not have validly entered the judgment without making the required findings, unless implicit findings were supported by the evidence in the record. See Section 452.400.2(1) ("court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development"); see also Van Pelt v. Van Pelt, 824 S.W.2d 135, 137-38 (Mo. App. W.D. 1992) (affirming implicit findings of physical endangerment or emotional impairment when they were supported by great weight of record). A trial court's failure to make those findings before restricting visitation can constitute reversible error. See Parker v. Parker, 918 S.W.2d 299, 300 (Mo. App. E.D. 1996) (reversing and remanding where trial court restricted visitation without making findings of physical endangerment or impairment of emotional development, and such findings were not supported by record); see also Buschardt v. Jones, 998 S.W.2d 791, 799 (Mo. App. W.D. 1999) (endangerment-impairment standard is same for either order of supervised visitation or restricted visitation).

Here, the parties entered into the 2005 modification judgment by consent and agreed to supervised visitation, but the modification judgment was not entered pursuant to Section 452.400.2(1). The trial court neither made explicit endangerment or impairment findings that would have allowed it to restrict Father's visitation, nor did the record support any implicit findings. Father denied the allegations of abuse, and the evidence showed that the allegations had never been substantiated despite multiple investigations. Looking again to the language of Section

8

452.400.2(3), the statute imposes the treatment-and-rehabilitation requirement when the trial court has ordered supervised visitation "because of" allegations of abuse. Here, the trial court's 2005 modification judgment was entered pursuant to a consent agreement between the parties, and the judgment and its attachments make no reference to allegations of abuse.[5]

Certainly, Section 452.325 allows parties to enter into settlement agreements regarding custody and visitation; however, such agreements are not binding on the trial court. See Section 452.325.1, .2. The overarching requirement in custody and visitation determinations is that the arrangement must be in the best interests of the child. Sections 452.375.2, 452.400.2(1), 452.410.1; see also Ireland v. Ireland, 914 S.W.2d 426, 428 (Mo. App. W.D. 1996). The custody and visitation laws assign the trial court the responsibility of determining a custody and visitation arrangement that reflects the best interests of the child. Id. "This duty is absolute and cannot be 'abdicated, relinquished or diminished' because the parents have entered an agreement." See Tompkins v. Baker, 997 S.W.2d 84, 90 (Mo. App. W.D. 1999) (citation omitted).

Thus, here we have a 2005 modification judgment imposing supervised visitation via an agreement between the parties that was not binding on the trial court and did not comply with Section 452.400.2(1)'s requirement that the trial court make endangerment-impairment findings before restricting visitation. Nevertheless, Mother requests—*although she testified she believes supervised visitation is no longer necessary*—that we enforce the 2005 modification judgment on the basis that Father did not comply with sub-Section 452.400.2(3), even though the 2005 modification was not entered pursuant to sub-Section 452.400.2(1). While there is no direct relevant precedent for the situation here, this Court in Kroeger-Eberhart v. Eberhart found that Section 452.400.2(3)'s treatment and rehabilitation requirements did not apply to modify a prior

---

[5] This opinion does not address a circumstance where the modification judgment was entered pursuant to a consent agreement that references abuse or domestic violence.

9

*pendente lite* order restricting visitation, where the prior order was entered by consent of the parties, without prejudice, and without a full evidentiary hearing on the merits. 254 S.W.3d 38, 47 (Mo. App. E.D. 2007). Likewise, here, the 2005 modification judgment was entered only by consent of the parties without a full evidentiary hearing on the merits or an admission of abuse by Father, and we find Section 452.400.2(3)'s treatment and rehabilitation requirements do not apply.

Last, were we to reverse the trial court's decision here by looking only at Section 452.400.2(3) in a vacuum, this would place an unreasonable burden on Father. In construing a statute, our primary focus is to ascertain and give effect to the intent of the legislature, as reflected in the plain language of the statute, considering the context of the words and the goal of the statute as a whole. Ming v. Gen. Motors Corp., 130 S.W.3d 665, 668 (Mo. App. E.D. 2004). We will not construe statutes in a way that produces unreasonable, oppressive, or absurd results. Id. at 668-69. Here, the statute's goal is to balance a parent's right to visitation with his or her child against the best interests of the child, specifically considering any danger to the child's physical health and any impairment of the child's emotional development. See Section 452.400. The plain language of the full statute requires the trial court to make certain findings before restricting visitation, and then, once those findings have been made and a modification entered, the burden switches to the parent to show that the circumstances preceding the modification have been rectified. The statute plainly contemplates that the burden to prove treatment and rehabilitation must follow the court's findings.

Under the circumstances here, it is unnecessary under the statute for Father to show rehabilitation when there was never a finding by the trial court—and the record is lacking in supporting evidence—that unrestricted visitation would cause physical endangerment or emotional impairment to the child. The requirements of Section 452.400.2(3) do not apply when

10

consent agreements between the parties for supervised visitation are not entered pursuant to Section 452.400.2(1). To hold otherwise would disincentivize parties from entering into such agreements. The trial court did not err in granting Father unsupervised visitation although Father did not prove he had been rehabilitated.

Point denied.

## Point II

In her second point on appeal, Mother argues the trial court erred in awarding Father sole legal custody of C.F., because Father failed to present evidence of a change in circumstances as required under Section 452.410.1. We disagree.

Before granting any motion to modify custody, whether legal or physical, the trial court must find both a change in circumstances of the child or her custodian and also that the child's best interests would be served by a modification. Section 452.410.1. A change in circumstances can occur if one parent interferes with the rights of the other or if one parent attempts to alienate the child from the other parent. Frantz v. Frantz, 488 S.W.3d 167, 175 (Mo. App. E.D. 2016). A parent's failure to follow the court's order or a parent's interference with the other's relationship with the child is "relevant in determining the ability and the willingness of parents to perform their functions and in determining which parent is more likely to allow the child frequent and meaningful contact with the other parent." Id. (citations and internal quotation marks omitted). A parent's failure to perform the ordered parenting functions, including fostering meaningful contact with the other parent, is relevant to determining the child's best interests. Id. We will sustain the trial court's grant of custody unless there is not substantial evidence supporting it, it is against the weight of the evidence, or it erroneously applies the law. In re Marriage of Sutton, 233 S.W.3d 786, 789 (Mo. App. E.D. 2007). "We will not set aside the trial court's judgment on child custody

11

unless we firmly believe that the decree is wrong and that the child's welfare requires another disposition." Id.

Father presented sufficient evidence at trial to support a finding for a change in circumstances and that the child's best interests would be served by a modification of legal custody. See Section 452.410.1. Father testified that Mother failed to confer with him on school choices for C.F., and failed to either provide his contact information to the schools or allow his information to be included in the school directories. Mother conceded that she did not provide Father with an insurance card for C.F. As well, Dr. Rissman, who had treated C.F., Mother, and Father for several years and who had witnessed interactions between both parents and C.F., testified that Mother vilified Father as a terrible person and wanted to limit C.F.'s relationship with her father and his family. Indeed, C.F. then testified that she did not want to see Father, referred to her stepmother as "the supervisor," and said that her half-siblings were not her brother and sister. Although Mother denied several of Father's allegations, the trial court is in the best position to judge the credibility of witnesses, and it may believe all, part, or none of a witness' testimony. Wills v. Wills, 197 S.W.3d 187, 192 (Mo. App. W.D. 2006).

Based on Father's evidence, the trial court here found that Mother had made efforts to alienate Father from C.F. in direct contravention of her obligations under the 2005 modification judgment and contrary to C.F.'s best interests. The court concluded Mother placed her own selfish interests ahead of C.F.'s best interests, and thus it was in the best interests of C.F. that Father be awarded sole legal custody.

Section 452.375.4 sets forth Missouri's public policy that the best interests of the minor child dictate having frequent, continuing and meaningful contact with both parents. The evidence adduced at trial supports a conclusion that Mother thwarted this public policy, and in doing so,

12

acted in a manner that was not in C.F.'s best interests. See Keel v. Keel, 439 S.W.3d 866, 880 (Mo. App. E.D. 2014). Although the trial court's judgment contained language quite critical of Mother, the judgment modifying legal custody was not a punishment, but a recognition that Mother had thus far failed in her parental duties as set forth by the laws of this State and in the 2005 modification judgment. There was substantial evidence supporting the judgment awarding Father sole legal custody and the evidence in the record does not cause us to believe that C.F.'s welfare requires an alternate disposition of legal custody, and thus under our standard of review we must affirm. See In re Marriage of Sutton, 233 S.W.3d at 789.

Point denied.

## Point III

In her third point on appeal, Mother argues the trial court erred in modifying custody of C.F., because the evidence presented at trial was stale and the delay between the date of trial and the date of the judgment was too long, preventing the trial court from accurately determining the best interests of the child. We disagree.

Mother cites to two cases in support of her argument that "orders concerning custody or visitation should not be based on stale evidence from long-concluded hearings": Searcy v. Searcy, 38 S.W.3d 462, 471 (Mo. App. W.D. 2001), in which the trial court's judgment after remand was reversed because the judgment after remand was based on the facts heard in the original hearing, conducted 30 months before the judgment on remand; and Courtney v. Courtney, 458 S.W.3d 462, (Mo. App. E.D. 2015), in which the trial court's amended judgment regarding the parties' current financial circumstances was based on evidence adduced 17 months prior. Here, the trial court released its judgment eight months after the trial on Father's motion to modify custody and visitation. Mother has produced no case law, nor have we found any, where an eight-month delay

13

between the trial and the judgment resulted in a stale judgment. Moreover, the history between the parties since the last modification in 2005 is relevant to whether a change in circumstances had occurred, and it was not error for the trial court to have considered it. Accordingly, we find that the judgment was not based on stale evidence, and we deny Mother's point.

Points IV and V

In her fourth and fifth points on appeal, Mother challenges aspects of the trial court's calculation of child support. Both points have merit. In her fourth point, Mother argues the trial court erred in awarding both parents the right to claim C.F. as an exemption for federal and state income tax purposes in alternating years without making the required findings that the presumed child support amount was unjust and inappropriate. In her fifth point, Mother argues the trial court erred in failing to complete or attach a Form 14 child support chart, thus preventing review on appeal.

To determine the correct amount of child support, a trial court must apply a two-step analysis under Rule 88.01 and Section 452.340. Sullins v. Sullins, 417 S.W.3d 878, 881 (Mo. App. E.D. 2014). The trial court must first calculate the presumed child support amount either by accepting the Form 14 calculations from one of the parties or by preparing its own. Id. After determining the presumed amount, the trial court must then consider whether to rebut the presumed amount as unjust and inappropriate after considering the relevant factors. Id. The trial court may not deviate from the presumed amount without first finding it unjust and inappropriate. J.D.W. v. V.B., 465 S.W.3d 82, 87 (Mo. App. E.D. 2015). We review the presumed award to determine whether it was supported by substantial evidence, but we review the trial court determination

14

rebutting the presumed amount and determining the final amount for an abuse of discretion. Sullins, 417 S.W.3d at 881-82.

As to Mother's fourth point, this Court's recent decision in J.D.W. v. V.B., 465 S.W.3d 82, is controlling here. In J.D.W., we noted that the presumed Form 14 calculation makes certain assumptions, including that the parent entitled to receive support is also entitled to claim the tax exemption for the children entitled to support. Id. at 87; see also Form 14, Assumption 7. As such, the presumed child support amount is based, in part, on the assumption that the parent receiving support also receives the tax exemption. Under the two-step process set forth in Rule 88.01 and Section 452.340, to deviate from the presumed amount by awarding the tax exemption to the parent paying support rather than the party receiving support, the trial court must first find that the presumed child support amount is unjust and inappropriate. See id. (finding reversible error when trial court awarded tax exemption to payor parent without first finding presumed child support amount unjust and inappropriate).

Here, the trial court calculated its own presumed child support award, stating the child support amount was calculated "in accordance with, and pursuant to, the Missouri Child Support Guidelines (Rule 88.01)," which this Court understands to constitute a finding that the presumed child support amount was not unjust and inappropriate. Yet, the trial court also awarded Father the right to claim the tax exemption for C.F. in alternating years. Applying J.D.W., as we must, we conclude the trial court erred as a matter of law in awarding the tax exemption to Father in alternating years without first rebutting the presumed child support amount as unjust and inappropriate.

As for Mother's fifth point on appeal, that the trial court's Form 14 is incomplete and thus unreviewable, we agree. The trial court need not include its Form 14 in the record, as long as the

15

judgment articulates how it calculated its Form 14. Roberts v. Roberts, 391 S.W.3d 921, 923 (Mo. App. W.D. 2013) (citing Directions, Comments of Use and Examples for Completion of Form No. 14, Line 12, Comment f(2)). The trial court here listed the parties' incomes and gave Father a credit for visitation as the sole basis for its presumptive child support award of $523.93 per month. However, although the trial court ordered Father to cover C.F. on his health insurance, it appears the trial court did not include a credit to Father for that coverage; and although the evidence adduced at trial revealed that both parents had other children living with them and that there were costs associated with C.F.'s private schooling, it appears the trial court's Form 14 did not account for these facts. Without an attached Form 14 and without a full articulation in the judgment of the basis for the presumed child support amount, we cannot determine whether sufficient evidence supported the child support amount. See Sullins, 417 S.W.3d at 881.

Points IV and V are granted. On remand, the trial court is directed to recalculate child support in accordance with this opinion.

Point VI

In Mother's sixth and final point on appeal, she argues the trial court abused its discretion in ordering her to pay a portion of Father's attorney's fees in light of the parties' financial resources. We find no abuse of discretion.

The trial court is an expert on attorney's fees and may award such fees as it deems appropriate. Short v. Short, 356 S.W.3d 235, 248 (Mo. App. E.D. 2011). The court's decisions on attorney's fees are "presumptively correct" and this Court will not reverse the trial court's award or denial of attorney's fees absent an abuse of discretion. Cohen v. Cohen, 178 S.W.3d 656, 673 (Mo. App. W.D. 2005). To demonstrate an abuse of discretion, the complaining party must show

16

the trial court's decision was against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice. Id.

In awarding attorney's fees, the trial court may consider any relevant factors, including the parties' financial resources and the conduct of the parties. Short, 356 S.W.3d at 248; see also Section 452.355.1. Moreover, Section 452.400.7 explicitly allows for attorney's fees where one party denies or interferes with the custody or visitation of the other parent. Here, the trial court considered both the parties' relevant incomes and also the parties' conduct before ordering Mother to pay part of Father's attorney's fees. The record reflected that although Father's income is substantially more than Mother's, Mother had incurred no attorney's fees on her own behalf because she was represented by her brother, while Father had incurred more than $20,000 in attorney's fees before the trial. The trial court explicitly based its award on its conclusion that Father's attorney's fees were caused by Mother's repeated interference with his relationship with C.F. and her "unrelenting effort to alienate the minor child" from Father.[6]

Our review of the record does not leave this Court with the impression that the trial court's decision was against the logic of the circumstances, nor is the award so arbitrary and unreasonable as to shock our sense of justice. Thus, we conclude the trial court did not abuse its discretion in ordering Mother to pay a portion of Father's attorney's fees.

---

[6] To the extent Mother argues on appeal that the record demonstrates the trial court was biased against her, this argument is refuted by the record. While Mother pulls a limited quotation from the transcript to support her position that the trial court believed her to be a "vindictive, mean-spirited individual," this Court has reviewed the entire record and discovered that the full statement from the trial court was substantially different:

> [Court]: Mr. Fowler, here is what I'm left with from your conversation back in
> '05. Your now ex-wife is a vindictive, mean-spirited individual.
> [Father]: Relentless.
> [Court]: Okay. That she has –and Frank, these are my impressions [of] what he
> said, I'm not saying I concur or don't concur, okay? I don't want your client to
> think I've prejudged this issue.

Mother has mischaracterized the record. Instead of showing bias against her, the trial court took steps to show it had not improperly prejudged Mother.

17

Point denied.

Conclusion

The judgment of the trial court is affirmed in part and is reversed in part, and we remand for the limited purpose of recalculating child support. Each party is directed to pay their own attorney's fees on appeal.

Gary M. Gaertner, Jr., Judge

James M. Dowd, P.J., concurs.
Kurt S. Odenwald, J., concurs.