### In re the MARRIAGE OF Lisa Joyce ESKEW and Jackie Lee Eskew.

Lisa Joyce (Eskew) Manley, Appellant,

v.

Jackie Lee Eskew, Respondent.

No. 23318.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 21, 2000.

Terry M. McVey, Crow, Reynolds, Shetley & McVey, L.L.P., Kennett, for appellant.

Barbara A. Godley, Welman, Hively & Godley, L.L.P., Kennett, for respondent.

CROW, Judge.

The marriage of Lisa Joyce Eskew and Jackie Lee Eskew was dissolved by a decree entered January 14, 1987. The decree awarded Lisa[1] "care and custody" of the parties' only child, Bryan Patrick Eskew, born September 24, 1984. The decree granted Jack certain "rights of visitation" with Bryan and ordered Jack to pay Lisa $190 per month child support.

Attached to the decree was a "Property Settlement and Child Custody Agreement" signed by the parties ("the 1987 Agreement"). The decree contained a finding that the 1987 Agreement was not unconscionable. Beneath that finding was a provision that the 1987 Agreement "shall be made a part of this decree."

One segment of the 1987 Agreement was paragraph 11. It read, in pertinent part:

"[Jack] shall be responsible for the college expenses of the child in an amount equal to the amount of tuition and room and board at the largest state operated university located in the State in which the child resides at the time he reaches college age."

On July 7, 1998, Jack filed a motion to modify the dissolution decree.[2] Insofar as pertinent to this appeal, the motion included (1) a prayer that the court "establish the parties' obligation to contribute to the minor child's college expenses," and (2) a prayer that the court "order [Lisa] to execute proper forms to effect [Jack's] claim of the minor child for income tax purposes in alternate years."

Lisa responded to Jack's motion with one of her own, praying for an increase in child support.

Following an evidentiary hearing, the trial court entered a "Judgment of Modification" ("the 1999 Judgment") which incorporated a "Parenting Plan" attached thereto. Two provisions of the Parenting Plan are:

"L. That effective September 1, 1999, [Lisa] have and recover from [Jack] the sum of $468.00 each month for the support of ... Bryan Patrick Eskew. [Jack's] obligation to pay child support shall abate for the months of June, July and August of each year. If the minor child attends post-secondary education and [Jack's] obligation to pay child support thus continues past the child's graduation from high school, child support shall be payable directly to the minor child upon his commencement of post-secondary education.

. . . .

N. Beginning with tax year 1999, that [Jack] be entitled to claim the minor child as his dependent for all purposes related to federal or state income taxation, and [Lisa] be ordered to execute whatever documents may be necessary to give effect to [Jack's] claim of said dependency."

Another provision of the Parenting Plan is paragraph "O." It orders Jack to pay, "as additional child support," half the cost each year for Bryan to attend "a post-secondary college, university, or vocational/technical school, state or private."[3]

---

1. In the transcript, Respondent refers to Appellant as "Lisa"; Appellant refers to Respondent as "Jack." For brevity and clarity, so shall this opinion. No disrespect is intended.

2. The dissolution decree had been modified in 1992. The 1992 modifications are immaterial to any issue in this appeal.

3. Paragraph O sets forth these "limitations" on Jack's duty:

Lisa brings this appeal from the 1999 Judgment. She presents two claims of error. Her second point, which this court addresses first, reads:

"The trial court erred in modifying [Jack's] obligation to pay all of the child's college expenses to paying one half of the college expenses because there was an insufficient showing of a substantial change of circumstances to justify the modification in that [Jack's] income had risen substantially since the entry of the original decree more than enough to off set [sic] any rise in the cost of college expenses."

An alert reader will recognize Lisa does not challenge the trial court's *authority* to reduce Jack's obligation for Bryan's college expenses from all (as provided in the 1987 Agreement) to half (as spelled out in paragraph O of the Parenting Plan). That is evidently because of § 452.325.2, RSMo 1994, which has remained unchanged since 1974. Under that statute, a trial court is not bound by the parties' agreement as to child support. *Williams v. Cole*, 590 S.W.2d 908, 911[2] (Mo. banc 1979); *McCreary v. McCreary*, 954 S.W.2d 433, 451–52[28] (Mo.App. W.D. 1997). Parties cannot, by agreement, even if incorporated in a dissolution decree, preclude a trial court from modifying child support. *Williams*, 590 S.W.2d at 911[2]; *McCreary*, 954 S.W.2d at 451–52[28]. Paying a child's college expenses is a form of child support. *Burton v. Donahue*, 959 S.W.2d 946, 949[5] (Mo.App. E.D.1998), citing *Leahy v. Leahy*, 858 S.W.2d 221, 226–27 (Mo. banc 1993).

In the argument beneath her second point, Lisa insists the evidence showed that during the twelve years and two months between entry of the dissolution decree and the evidentiary hearing on the parties' motions to modify,[4] Jack's income increased from just under $21,000 per year to over $36,000 per year. Lisa concedes the cost of sending a child to college also rose during that period. However, she maintains the $278 per month increase in child support imposed by the 1999 Judgment (from $190 to $468), coupled with the higher college costs, would consume less than one-third of the increase in Jack's income even if he pays all of Bryan's college expenses. Consequently, declares Lisa, there was no change in circumstances so substantial as to justify any reduction in Jack's obligation under paragraph 11 of the 1987 Agreement to pay all of Bryan's college expenses.

Jack's brief, as one might expect, argues otherwise.

For the reasons that follow, this court holds paragraph O of the Parenting Plan is premature, hence this court does not reach the merits of Lisa's second point.

Bryan is now sixteen years of age and, presumably, a high school junior.[5] Obvi-

"1. 'Cost' shall include tuition, fees, books, dormitory costs for room and board. It does not include room and board while residing with either parent.

2. The one-half costs [Jack] is to pay shall be one half of the actual cost to the child, i.e., if child receives a scholarship or other aid which reduces cost, the cost does not include the amount of such scholarship or aid. For this purpose, loans to the student shall not be considered a scholarship or other aid.

3. The child must carry at least a minimum number of twelve credit hours each semester not including the summer semester.

4. The maximum cost which [Jack] shall be responsible for in any given school year will be one half of the then cost for tuition, fees, books, and dormitory costs for room and board at the University of Missouri at Columbia, regardless of what institution the child attends.

5. [Jack] shall not be responsible for paying one-half of the costs for more than eight semesters at a college or university."

The above limitations are apparently taken from *Echele v. Echele*, 782 S.W.2d 430, 437 (Mo.App. E.D.1989), with the objective of making paragraph O specific enough to be enforced.

4. The hearing was held March 18, 1999.

5. The trial court interviewed Bryan in chambers at the outset of the evidentiary hearing

ously, when the trial court entered the 1999 Judgment there were no college expenses for either Lisa or Jack to pay. No such expenses will arise until Bryan enrolls in college—if indeed he does—sometime after graduating from high school in 2002. That will be more than three years after the trial court heard the evidence on which the 1999 Judgment is based.

In *Sunderwirth v. Williams,* 553 S.W.2d 889 (Mo.App.1977), a separation agreement entered into concomitantly with a divorce obligated the father to pay child support for any of the parties' four children who, in the future, attended college. *Id.* at 891. Several years after the divorce, the father sought modification. *Id.* By then, the eldest child had graduated from college; the second child was a college junior; the third child was a high school junior; the youngest child "was finishing grammar school." *Id.* The trial court ordered the father to pay a specified sum per month per child for each month each child "may be now or in the future may attend any accredited college or university." *Id.* at 893.

The appellate court reversed, saying:

"There is no showing ... of the ability and capacity of the two younger children for college work, nor any convincing fact or circumstance tending to show the reasonable cost of support and maintenance of any of the children now attending college at the particular institution where they have matriculated or plan to enroll. In these two respects, the decree lacks evidentiary support."

*Id.* at 894.

In the instant case, Lisa presented an exhibit showing the "1998–99 Estimated Costs" for a freshman at the University of Kentucky.[6] According to Lisa, the exhibit shows the "annual tuition, room and board costs" at that university totalled $7,810. That was the only evidence from which the costs for an enrolling freshman in the 2002–03 academic year—the year Bryan would enroll if he enters college for the fall semester after high school graduation—could be estimated.

In *Bryant v. Lloyd,* 747 S.W.2d 648, 649 (Mo.App. W.D.1988), a divorced mother filed a motion seeking more child support from the father of the parties' two youngest children (their third child had become emancipated). The trial court granted an increase; however, the mother appealed, claiming it was not enough because the second child was a college student (the youngest child, age 13, was living with the mother). *Id.* The appellate court held the increased amount was all the father could pay, hence the trial court did not err in declining to award more. *Id.* Noting the youngest child "will reach college age in a few years," the appellate court said the parties could evaluate her "at or near that time" to determine the financial ability of the father and the capacity of the child for college work. *Id.*

This court holds the logic of *Sunderwirth* and *Bryant* applies here. Although the evidence demonstrated an increase in Jack's income since the 1987 Agreement, and likewise showed the cost of a college education had risen since then, the evidence did not—and could not—establish what Jack's income (or Lisa's) will be when Bryan is expected to enter college, more than three years after the modification hearing. Furthermore, the evidence did not—and could not—show the cost of a four-year education at the University of Missouri at Columbia[7] for a freshman enrolling at that time.

This court therefore holds the evidence insufficient to support any order regarding

(March 18, 1999). Bryan said he was then in the ninth grade.

**6.** On the date of the evidentiary hearing, Bryan was residing with Lisa and her husband in Ashland, Kentucky.

**7.** Footnote 3, *supra.*

payment of Bryan's college expenses. In so deciding, this court does not ignore *Tuning v. Tuning*, 841 S.W.2d 264 (Mo. App. S.D.1992). There, the eighteen-year-old son of divorced parents was a high school senior planning to attend the University of Missouri at Columbia. *Id.* at 265. The mother, as custodial parent, filed a motion to increase the child support she was receiving from the father. *Id.* The trial court granted an increase. *Id.* This court reversed because certain statutory requirements and Rule 88.01 were not followed. *Id.* at 266–67. The relevance of *Tuning* to the instant case is a passage in the opinion saying:

> "Consideration of a child's college expenses need not wait until he has entered college. In fact, there may be circumstances where, unless those expenses are considered in advance, the child could not attend college. An increase in child support for such future expenses can be made effective at a future date and contingent upon the child's entry into college."

*Id.* at 267[7].

This court recognizes in the instant case, as it did in *Tuning*, that it may be impractical to wait until Bryan enrolls in college to resolve a dispute about how much of his college expenses Jack should be compelled to pay. Accordingly, if Bryan, upon nearing graduation from high school, decides to attend college, either Lisa or Jack can seek a ruling by the trial court on that issue. When that time arrives, the trial court, mindful of the obligation Jack assumed in paragraph 11 of the 1987 Agreement, will have the benefit of fresh evidence regarding Jack's and Lisa's incomes, the tuition, room, board and other college costs, and such scholarships, if any, as Bryan may receive.[8]

Civil Procedure Form No. 14 has evolved so that it now includes a line for "Other extraordinary child rearing costs" (line 6e). The Comment for that line explains: "Post-secondary educational expenses ... are not included in the schedule of basic child support obligations; therefore, these expenses may be included in Form No. 14 as an 'other extraordinary child-rearing cost' if the parents agree or the court orders that the parents contribute to payment of these expenses." The Comment adds: "An order may include the cost of tuition, room and board, books, fees and other reasonable and necessary expenses." Those explanations are followed by this:

> "*CAVEAT: A finding by the court ... that the presumed child support amount is unjust or inappropriate is not necessary where the parent obligated to pay support is also ordered to pay **any** percentage of the other extraordinary child-reading costs of the children who are the subject of the proceeding.*"

The trial court, with the benefit of evidence that will be available in 2002, guided by Form 14, will be in a better position then to address the college cost issue than it was when it entered the 1999 Judgment. Accordingly, mindful that Lisa will be entitled to child support of $4,212 per year from Jack[9] until a future modification or until § 452.340, RSMo Cum.Supp.1999, terminates Jack's child support obligation, this court reverses paragraph O of the Parenting Plan incorporated in the 1999 Judgment, leaving paragraph 11 of the 1987 Agreement intact (but, of course, subject to modification).

■ Lisa's first point relied on reads:

"The trial court erred in awarding the noncustodial parent ([Jack]) the tax dependency exemption for the minor child because the award of the tax exemption to the noncustodial parent is a deviation from Civil Procedure Form No. 14 in

---

8. Bryan told the trial court his grades are "A's and B's." Jack testified Bryan is very intelligent.

9. The $468 per month child support awarded Lisa by paragraph L of the Parenting Plan incorporated in the 1999 Judgment abates in June, July and August.

that the amount of child support order [sic] to be paid was calculated pursuant to the schedule of basic child support obligations in Form 14; that said schedule assumes that the parent receiving child support claims the tax exemption and the court made no written or specific finding that the child support under a correctly calculated Form 14 was unjust or inappropriate, nor did the court consider the economic impact in awarding [Jack] the exemption."

Lisa's first point attacks paragraph N of the Parenting Plan incorporated in the 1999 Judgment. That paragraph is quoted earlier in this opinion.

In the argument beneath her first point, Lisa asserts the 1987 Agreement and the dissolution decree are silent about "allocation of the tax dependency exemption" and she has always taken it. Jack does not challenge that declaration.

In adjudicating the child support issue, the trial court adopted a Form 14 presented by Jack's lawyer ("Jack's Form 14"). Line 1 of Jack's Form 14 showed a monthly gross income of $893 for Lisa and $3,106 for Jack. Those incomes, together with health insurance costs paid by Jack for Bryan, resulted in a presumed child support amount (line 12 of Jack's Form 14) of $468—the amount awarded Lisa by paragraph L of the Parenting Plan incorporated in the 1999 Judgment. That judgment displays a finding by the trial court that $468 per month "is not rebutted as being unjust or inappropriate."

Lisa points out that prior to the current version of Form 14, which took effect in 1998, trial courts were not required to consider the impact of allocating tax exemptions for children in calculating the presumed child support amount. *Coble v. Coble*, 931 S.W.2d 206, 209[6] (Mo.App. W.D.1996). In *Coble*, a dissolution case, the appellate court held allocation of a tax exemption is a separate and distinct issue from child support and is evaluated like any other asset rather than as part of a support order. *Id.* at [5].

However, emphasizes Lisa, the current version of Form 14 (which was in force when the trial court entered the 1999 Judgment), is based on several assumptions, one of which is Assumption 7. It reads: "The schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support."

Lisa reasons that because the amounts of child support in the schedule accompanying Form 14 are based on the assumption that she—the parent receiving support—will claim the tax exemption for Bryan, the trial court's decision to award the tax exemption to Jack leaves her with less money to support Bryan than the Supreme Court of Missouri assumed she would have upon being awarded the presumed child support amount on line 12 of Jack's Form 14. In Lisa's words, "[T]he allocation of the tax dependency exemption to [Jack] is inconsistent with the presumed correct amount of child support as calculated under Form 14." Because of that, says Lisa, the trial court could award the tax exemption for Bryan to Jack only if the court found the presumed child support amount on line 12 of Jack's Form 14 unjust or inappropriate. As we have seen, the trial court made a contrary finding.

Lisa bases her first point on Rule 88.01(b), Missouri Rules of Civil Procedure (2000), which has remained unchanged since July 1, 1998. It reads:

"There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded in any judicial ... proceeding. Unless a request is filed pursuant to Rule 73.01(a)(3), a written finding or a specific finding on the record by the court ... that the child support amount under a correctly calculated Form No. 14, after consideration of all relevant factors, is unjust or inappropriate shall be sufficient in a particu-

lar case to rebut the presumption that the amount of child support so calculated is correct."

■ A child support award other than one correctly calculated under the guidelines for Form 14 is ineffective where there is no finding by the trial court that the correctly calculated amount would be unjust or inappropriate. *Myers–Geiger, by Myers v. Geiger*, 878 S.W.2d 925, 926[2] (Mo.App. S.D.1994). Where a trial court enters a child support award that varies from the amount correctly calculated pursuant to Form 14 and fails to make a finding that the amount correctly calculated, after consideration of all relevant factors, is unjust or inappropriate, such failure is error which requires reversal and remand. *Id.* at 927[4].

Here, the trial court awarded Lisa the amount of child support calculated on Jack's Form 14 ($468 per month). Lisa makes no contention that said amount was incorrectly calculated. Obviously, a finding by the trial court that the *amount* of child support calculated on Jack's Form 14 was unjust or inappropriate would be inconsistent with the $468 award. Consequently, the narrow issue this court must decide is whether the trial court, in order to award Jack the tax exemption for Bryan, was required to make a specific finding on the record that it would be unjust or inappropriate for Lisa to claim the exemption instead of Jack.

■ Lisa cites no statute, rule or case law authorizing this court to impose such a requirement on a trial court. Because of the ever-increasing complexity of Form 14, the proliferation of Directions, Comments, Caveats and Assumptions accompanying Form 14, and the steadily rising flow of case law addressing Form 14, this court declines to place yet another mine in this legal minefield for trial courts to dodge. Instead, this court shall review the award of the tax exemption on an abuse of discretion standard.

■ Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said the court abused its discretion. *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298, 303[8] (Mo. banc 1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992).

■ Applying that standard, this court finds no error. The $893 monthly income listed for Lisa on Jack's Form 14 was imputed to her. Lisa testified she is physically able to work but is unemployed, as she has a two-year-old child by her present husband and prefers to stay home with that child. Consequently, Lisa earns no income against which to apply the tax exemption for Bryan. Nonetheless, argues Lisa, she and her husband file joint income tax returns, hence the tax exemption for Bryan would lessen her and her husband's joint tax burden. According to Lisa, her husband earned approximately $76,000 in 1998.

While allowing Lisa the tax exemption for Bryan would undoubtedly save Lisa and her husband some taxes, the same is true for Jack if he is allowed the exemption. Jack's income is about half that of Lisa's husband. Jack, like Lisa, has a new spouse. Jack's wife was a student in a "nursing program" at the time of the evidentiary hearing; it is inferable she was earning no income. Additionally, she was pregnant; the date she was expected to give birth is unrevealed.

Furthermore, besides paying Lisa child support, Jack pays $47 per month ($564 per year) for health insurance for Bryan. Finally, if Bryan chooses to attend college and the trial court has to resolve a dispute between Lisa and Jack about how much of Bryan's college expenses Jack must pay, the trial court can modify paragraph N of the Parenting Plan incorporated in the

1999 Judgment if the evidence at that time demonstrates modification is warranted.

For the reasons in the five preceding paragraphs, this court denies Lisa's first claim of error.

Paragraph O of the Parenting Plan incorporated in the 1999 Judgment is reversed. In all other respects, the 1999 Judgment is affirmed. Costs of this appeal are taxed half against Lisa and half against Jack.

PREWITT and GARRISON, JJ., concur.