

# In the Missouri Court of Appeals
## Eastern District

DIVISION THREE

| | | |
|---|---|---|
| J.D.W., et al., | ) | No. ED101815 |
| | ) | |
| Respondents, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of the City of St. Louis |
| | ) | |
| V.B., | ) | Honorable Elizabeth B. Hogan |
| | ) | |
| Appellant. | ) | Filed: June 30, 2015 |

This appeal arises from a judgment in a paternity action addressing custody of and support for the minor child of V.B. ("Mother") and C.J.W. ("Father"). We reverse and remand, in part, and affirm, in part.

Mother and Father were in a relationship for five years, but never married. They have one child, who was born in 2010 while they lived in Oklahoma. It is undisputed that Father is the child's biological parent. The family moved to Colorado for a year and then to Missouri in February 2012 so Mother could enroll in a program at a local university. She started taking prerequisite classes at a community college, but then had to quit so that she could work. In early 2013, Mother and Father ended their relationship. Mother indicated that she wanted to move back to Colorado with the child, and Father filed this paternity suit to establish his legal rights. Father sought joint legal and physical custody. Mother sought sole physical custody, with visitation to Father only on certain holiday and school breaks. This plan would have allowed her

to move back to Colorado, where her family lived and where she claimed she wanted to continue her education.

The trial court considered Mother's wishes, but found that she had no specific plans for starting school and no job offers upon returning to Colorado other than her former hourly wage retail position. Thus, she would have to live with her parents in Colorado and, if she attended school there, would have to put the child in daycare four days of the week. The trial court noted that Mother has already once changed her mind regarding her education after moving across the country and that there are educational and employment opportunities in Missouri for Mother. The trial court also considered that Father did not want the child to move to Colorado because—despite his ability as an airline employee to fly himself and the child on stand-by for free—that distance would severely hamper his relationship with the child. Prior to the paternity action, Father saw the child every day and, during the proceedings, saw him twice a week. He had a stable job and was willing to make changes to his schedule to spend more time with the child. The child also saw his paternal grandparents almost every weekend. The trial court noted that Mother thought Father was addicted to computers and that the child suffered a bee sting while in Father's care.

The trial court concluded that joint legal and physical custody was in the child's best interest, after considering Mother's reasons for wanting sole custody as compared to the damage that her proposed move would do to the child's relationship with Father. The parenting plan ordered by the court gives each parent approximately equal amounts of time with the child. The trial court also designated Mother as the residential parent for mailing and education purposes provided she resides in the greater St. Louis, Missouri area. If she moves, then Father is automatically designated the residential parent. The trial court found that the presumed child

support amount of $372 a month was not unjust or inappropriate and ordered Father to pay that amount to Mother. It also ordered that Father could take advantage of the child income tax exemption in even-numbered years. The trial court denied Mother's request for Father to pay her attorney fees on the grounds that she did not "make as much" as he did. This appeal follows.

In her first point, Mother claims that the trial court's refusal to award her sole physical custody is not supported by the evidence, is a misapplication of the law and is an abuse of the trial court's discretion. We disagree.

Mother construes the judgment as "forbidding" her from moving to Colorado. Although much of the trial court's language focuses on her proposed move and its impact on the child, nothing in the judgment actually prevents Mother from moving. To be certain, any such relocation would be subject to the requirements of Section 452.377 and would also likely necessitate a motion to modify under Section 452.410.1. The judgment also purports to automatically re-designate the residential parent if Mother moves, which we address in the next point. Thus, while Mother's relocation has consequences, it is not forbidden. Hence, Mother's reliance on case law—mostly from other states—for the proposition that a court may not restrict a custodial parent's residence is misplaced on this point.

Mother does not otherwise challenge the trial court's conclusion—or any of its findings in support thereof—that joint physical custody was in the best interests of the child. Rather, Mother's argument primarily revolves around what she believe is in *her* best interest—namely, moving back to Colorado where she is from and where her family resides. This is not the proper focus of a custody analysis. Our independent review of the record reveals that the trial court's conclusion that sole custody to Mother was not in the child's best interest was not erroneous. The trial court properly considered Mother's uncertain employment and educational plans for her

proposed future in Colorado as compared to the severe impact moving would have on the child's relationship with Father. This is consistent with the policy of this State that *both* parents have "frequent, continuing and meaningful contact" with the child as long as it is in the *child's* best interest. Section 452.375.4.[1] Moreover, the trial court's findings—while not enumerated as such—indicate that it also considered all the factors in Section 452.375.2(1)-(8) that were relevant here.[2]

The determination of joint physical custody is supported by substantial evidence, is not against the weight of the evidence and does not misstate or misapply the law. See Thorp v. Thorp, 390 S.W.3d 871, 877 (Mo. App. E.D. 2013). Giving the trial court the great deference it is due, we cannot say that Mother has demonstrated an abuse of the court's discretion such that we are firmly convinced that the welfare of the child requires an alternative arrangement. See id.

Point I is denied.

In her second point, Mother argues that the trial court erred when it designated Mother as the "residential parent for mailing and educational purposes," provided that she "resides in the greater St. Louis, Missouri area." If Mother relocates, then the judgment purports to automatically re-designate Father as the residential parent. We agree this was error.

The designation of a "residential parent" under Section 452.375.5(1)[3] for the child's educational and mailing purposes is considered a sub-issue of custody. Meissner v.

---

[1] Section 452.375 governs custody determinations in paternity actions, and a parenting plan must be ordered under section 452.310. See Section 210.853.

[2] Mother admits that she did not challenge the lack of statutory findings in the trial court, and she cannot do so now. The record reveals that there was evidence of the following relevant factors supporting the trial court's custody determination: the parents' wishes, the child's need for a "frequent, continuing and meaningful" relationship with both parents, the willingness of the parents to perform their parental functions, the interaction of the child with the parents and others, which parent was more likely to allow "frequent, continuing and meaningful" contact with the other and the parents' desires to relocate the child. See Section 452.375.2 (1)-(4), (7). There was no evidence relating to the child's adjustment, his wishes or the physical or mental health of anyone involved. See Section 452.375.2(5)-(6), (8).

[3] The legislature recognized that an award of joint physical custody leaves unresolved the child's address for purposes of education and mailing and thus requires the trial court in those awards to designate a "residential parent"

4

Schnettgoecke, 427 S.W.3d 864, 866 (Mo. App. E.D. 2014) (citing Clayton v. Sarratt, 387 S.W.3d 439, 445 (Mo. App. W.D. 2013)). A change to the residential designation constitutes a change to the terms of joint physical custody, but it is not a change to the custodial arrangement itself. Meissner, 427 S.W.3d at 866.

As for all modifications of the terms relating to custodial arrangements, the standards set forth in Section 452.410 apply to a change in the "residential parent." See id. Therefore, that designation can only be changed upon a motion to modify and a finding by the trial court that there has been a substantial change in the circumstances of the child or his custodian, which requires a modification to the terms of the judgment in order to serve the best interests of the child. See id. at 867; see also Section 452.410.1. Provisions of a dissolution judgment that include an automatic change to a term relating to child custody upon the happening of some event in the future have been held unenforceable because they improperly predetermine what would constitute the significant change in circumstances required for modification. See Burch v. Burch, 805 S.W.2d 341, 343 (Mo. App. E.D. 1991); In re Marriage of Dusing, 654 S.W.2d 938, 943 (Mo. App. S.D. 1983). The provision designating Mother as the residential parent, but then automatically changing that designation to Father if Mother relocates, improperly predetermines that a change of circumstances warranting modification has occurred.

As noted above, if Mother wants to move, she must follow Section 452.377 and there would likely be a need to request modification under Section 452.410. Those statutes adequately address the consequences of a custodial parent's relocation. Thus, there is no need to include restrictions on relocation or automatic changes to terms upon relocation in the judgment. We are

for those purposes. Although courts have used the terms interchangeably, the designation of "residential parent" is not the same as a declaration of a child's "principal residence," which is usually unnecessary in a joint custody situation because both parents are custodial and both of their homes are considered the child's principal residence. See Gaudreau v. Barnes, 429 S.W.3d 429, 432-33 (Mo. App. E.D. 2014); see also Hall v. Utley, 443 S.W.3d 696,707-08 (Mo. App. W.D. 2014).

reluctant to merely order the restriction and automatic re-designation language stricken from the judgment because we cannot be sure that the trial court would have designated Mother the residential parent without it. Thus, we reverse the portion of the judgment designation of Mother as residential parent and remand for a designation of residential parent that is consistent with this opinion.

Point II is granted.

In her third point, Mother argues that the trial court erred in awarding Father the child income tax exemption in alternating years without first finding that the presumed child support amount calculated on Form 14 was unjust or inappropriate. We agree.

When awarding child support in a paternity or a dissolution action, the trial court is required to follow a two-step procedure. Vaughn v. Bowman, 209 S.W.3d 509, 514 (Mo. App. E.D. 2006) (citing Section 452.340, Rule 88.01 and Woolridge v. Woolridge, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996)). First, the trial court determines the presumed child support amount in accordance with Form 14, either by accepting the Form 14 calculation of one of the parties or by doing its own. Id. at 514. Then, the trial court determines whether, considering all relevant factors, the presumed child support amount is unjust or inappropriate; such a finding rebuts the presumption that the amount is correct. Id. Here, the trial court found that the amount calculated on Form 14 was not unjust or inappropriate.

The amount calculated on Form 14 is based on certain assumptions, including "that the parent entitled to receive support claims the tax exemption for the children entitled to support." Form 14, Assumption 7. Therefore, the presumed child support amount is based, in part, on the fact that that the parent receiving support for the child is also getting the benefit of the tax exemption for that child. "Consequently, if the trial court switches the presumed award of the

6

tax exemption from the child support obligee to the obligor, it is, in effect, rebutting the PCSA." Conrad v. Conrad, 76 S.W.3d 305, 313 (Mo. App. W.D. 2002). As a result, in order to award the tax exemption to the parent paying support instead, the trial court must first find that the presumed amount is unjust or inappropriate. Vaughn, 209 S.W.3d at 514. Here, the trial court did not make that finding, but still awarded the tax exemption to Father in alternating years.

Father relies on In re Marriage of Eskew for the proposition that no specific finding of "unjust and inappropriate" is necessary for the trial court to award the tax exemption to the support-paying parent. 31 S.W.3d 543 (Mo. App. S.D. 2000). Noting the complexity of Form 14 and the proliferation of guidance therein and in case law, the court in Eskew refused to "place yet another mine in this legal minefield for trial courts to dodge." Id. at 550. Instead, it held, the award of a tax exemption should be reviewed for an abuse of discretion. Id. Although we, like the Western District, agree with the Southern District's observations about the burdens that Form 14 and its complexity puts on trial courts, we think that our reasoning in Vaughn—grounded in the language of the applicable statute, rules and well-established precedential case law—is the sounder approach. See Vendegna v. Vendegna, 125 S.W.3d 911, 914-15 (Mo. App. W.D. 2004); Dodge v. Dodge, 398 S.W.3d 49, 55 (Mo. App. W.D. 2013) (both declining to follow Eskew). Moreover, concerns about legal burdens "cannot replace what is required by the law." Jarvis v. Jarvis, 131 S.W.3d 894, 898 (Mo. App. W.D. 2004) (rejecting Eskew's reasoning). Therefore, we also decline to follow Eskew's approach.

We conclude that the trial court erred as a matter of law in awarding the tax exemption to Father in alternating years without first rebutting the presumed child support amount as unjust and inappropriate. Therefore, the order of child support must be reversed. See Vaughn at 515. On remand, the trial court is directed to recalculate child support consistent with this opinion.

Point III is granted.

In her final point, Mother claims that because of the parties' disparity of income—Father's income was twice that of Mother's—the trial court erred in failing to award her attorney fees. The court in a paternity action "may" order reasonable attorney fees "be paid by the parties in such proportion and at such times as determined by the court." Section 210.842. The trial court is vested with broad discretion to award attorney fees, and we will not disturb that award absent an abuse of discretion. Scobee ex rel. Roberts v. Scobee, 360 S.W.3d 336, 346-47 (Mo. App. W.D. 2012). Although disparity of income is one relevant factor for the trial court to consider, the court has discretion to consider other factors, including the parties' conduct during the proceedings and the merits of the case. Id. The trial court did not abuse its discretion by failing to award Mother her attorney fees in this case simply because Father made more money than she did. Mother has failed to overcome the presumption that the trial court's decision not to award attorney fees was correct.

Point IV is denied.

The designation of the residential parent and the child support award are reversed. The case is remanded for re-designation of the residential parent and reconsideration of child support consistent with this opinion. In all other respects, the judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

8