Colleen Dolan, P.J.
*638 A.D.N. ("Mother") appeals the trial court's Judgment and Decree for Custody, Visitation and Child Support that awarded her and J.D.G. ("Father") joint legal and physical custody of G.W.G. ("Child"), with Father designated as the residential parent. Mother offers three points on appeal. In her first point, Mother argues that the trial court erred in failing to recuse itself when the court stated, after it had entered its judgment, that the court had been aware Father had previously been charged with child molestation. Acknowledging that it had a duty to be fair, impartial, and make its decision based on the evidence presented at trial, the court stated that it had initially considered awarding custody to Father to be highly improbable when the trial began because of this prior criminal charge. In her second point, Mother contends that the trial court erred in designating Father as the residential parent and entering its parenting plan because the court misapplied the law. Mother further argues that the trial court's parenting plan and designation were unsupported by substantial evidence because the court gave undue weight to Father's residence in Shelby County and Mother's move to Palmyra, Missouri. In her final point, Mother argues that the trial court erred in awarding Father the income tax exemption for Child in alternating years because this allocation was a misapplication of the law in that the presumed child support amount is calculated with the assumption that the child support payee (Mother) receives the tax exemption, and the trial court had not found that the presumed child support amount was unjust and inappropriate.
Mother's Point III is granted. We affirm in part and reverse in part, and we remand for the limited purpose of recalculating child support.
I. Factual and Procedural Background
The following facts and inferences were adduced from the evidence presented at trial. Child was born on October 24, 2011. Mother is employed as a janitor at a local Christian church; Father is self-employed as a farmer. Mother and Father shared child-rearing responsibilities and cohabitated in Father's home in Shelby County, Missouri until the fall of 2015, when Mother moved with Child without consulting Father. Mother relocated with Child to Palmyra, Missouri and subsequently denied Father contact with Child on multiple occasions. In addition to his requests to see Child, Father also expressed multiple times that he wanted Child to live with him.
Father filed his Petition for Order of Paternity and Child Custody on December 7, 2015. By agreement of the parties, the trial court adjudged and declared Father to be child's natural father and established said paternity through its order entered on June 16, 2016. At trial, both parties presented proposed parenting plans; Father requested joint legal and physical custody with Father designated as the residential parent, while Mother requested joint legal custody and sole physical custody.
After trial, the court entered its Judgment and Decree for Custody, Visitation and Child Support on July 28, 2016. The court, considering all relevant factors, concluded that it was in Child's best interest that the parties be awarded joint legal and physical custody and to adopt Father's proposed parenting plan designating Father as the residential parent. The court concluded that Father's parenting plan aligned with Child's best interest that he maintain meaningful contact with both parents.
*639 The court explained that designating Father as the residential parent would provide a more stable setting for Child. Father had lived in the Shelby County area for several years and expressed his intention to stay there indefinitely. Mother, however, had moved twice in the previous year and indicated she would consider relocating again for a better job opportunity. Additionally, because father worked at his own residence as a farmer, Child would be provided with an opportunity to see his parents more often if he lived with Father. As part of its judgment, the trial court also ordered Father to pay child support in the amount of $136.00 per month. Additionally, after finding that the presumed child support amount calculated by the Form 14 was "just and appropriate," the court awarded the income tax exemption for Child to both parties in alternating years; Father was to receive the exemption in even years and Mother to receive the exemption in odd years.
Following the trial court's entry of its judgment, Mother filed a Motion to Reopen the Evidence and New Trial. In her motion, Mother presented affidavits that a deputy sheriff had provided information indicating that an audio recording existed where Father confessed to child molestation. Evidence that Father had been tried and acquitted of this charge ten years earlier was presented at trial. During the hearing on Mother's motion, the trial court admitted to knowing of the child molestation charge against Father before trial in this case began, and further stated, "you're supposed to be fair and impartial and not pre-judge anything ... I was thinking when we had the trial that there's probably no way I was ever going to give him the kid." The trial court subsequently denied Mother's motion.
This appeal follows.
II. Discussion
Point I
In Mother's first point on appeal, she argues that the trial court erred in failing to recuse itself when the court acknowledged, after it had entered its judgment, that the court had been aware Father had previously been charged and acquitted of child molestation. After the trial court had entered its judgment, it stated "you're supposed to be fair and impartial and not pre-judge anything ... I was thinking when we had the trial that there's probably no way I was ever going to give him the kid." Despite evidence presented at trial of the molestation charge against Father and his eventual acquittal, Mother claims the court erred in failing to recuse itself because it was aware of facts outside the record and openly stated it had initially concluded that it was unlikely to award custody to Father because of the previous child molestation charge against him.
Standard of Review
Mother concedes that this point was not preserved for appellate review, and asks we review this point applying plain error review pursuant to Rule 84.13(c). Rule 84.13(c) allows this Court to review unpreserved plain errors affecting substantial rights, at our discretion, when we find that manifest injustice or miscarriage of justice has resulted therefrom.[1] Rarely will an appellate court find plain error in a civil case. McGee ex rel. McGee v. City of Pine Lawn, 405 S.W.3d 582, 588 (Mo. App. E.D. 2013).
Disqualification for Appearance of Impropriety
Rule 2.211(a)(1) states that a judge shall recuse him or herself in any proceeding in which the judge's impartiality might reasonably be questioned when the judge *640 has knowledge of facts that are in dispute in the proceeding that would preclude the judge from being fair and impartial. Disqualification may be necessary when a judge appears to be biased because of facts known through an extrajudicial source that results in a decision on the merits on some other basis than what the judge has learned from his or her participation in a case. Francis v. Wieland, 512 S.W.3d 71, 82 (Mo. App. W.D. 2017) (emphasis added). In assessing facts in support of disqualification, we consider the entire record. Id.
It is presumed "that a judge acts with honesty and integrity and will not preside over a trial in which he or she cannot be impartial." Johnson v. March, 376 S.W.3d 26, 29 (Mo. App. E.D. 2012). That presumption is overcome and disqualification is required if "a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court." Dunn v. Dunn, 536 S.W.3d 304, 308, 2017 WL 4622130, at *3 (Mo. App. W.D. Oct. 17, 2017). Therefore, the requirement of recusal under Rule 2.211(a)(1) is not limited to actual prejudice. Id. However, if lack of bias or impartiality "are defined to mean the total absence of preconceptions in the mind of a judge, 'then no one has ever had a fair trial and no one ever will.' ". Elnicki v. Caracci, 255 S.W.3d 44, 49 (Mo. App. E.D. 2008) (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. E.D. 1990) ).
Analysis
In this case, Mother claims that the trial court plainly erred in failing to recuse itself because it had pre-existing knowledge that Father was charged with child molestation ten years prior. Specifically, the trial court acknowledged at the hearing on Mother's Motion to Reopen Evidence and New Trial that it was aware of Father's previous child molestation charge and that it initially thought this would prevent it from awarding custody of Child to Father. Mother argues that, even though the potential bias seemingly would have worked in her favor, the trial court should have recused itself because its admission of its awareness of facts outside the record created the appearance of impropriety. Mother also asserts that the court might have bent over backwards (by ruling in Father's favor) to avoid the appearance of impartiality. We find this unpersuasive.
We review the entirety of the record when determining whether disqualification is necessary. Francis, 512 S.W.3d at 82. At the hearing on Mother's post-trial motion, the court stated "you're supposed to be fair and impartial and not pre-judge anything ... I was thinking when we had the trial that there's probably no way I was ever going to give him the kid." While this statement alone might suggest impropriety, the court's statements that followed contradict that suggestion: "I didn't realize he had the other child he had raised and they had lived together for several years with the child, and a jury found him not guilty ... I came to a different result than I thought I would ... But the evidence presented at the trial, he had the other child and how he was raising this child, it swayed me " (emphasis added).
In this case, the court clearly knew some facts about Father before trial began that created an initial inclination in the court's mind. However, based upon the court's conclusions and the evidence presented at trial, the court appears to have weighed the facts impartially. Mother's assertion that the court "bent over backwards" to avoid the appearance of impropriety is wildly speculative-especially considering that all facts known to the court before trial were contained within and expanded upon through the evidence presented at trial. Specifically, evidence was presented showing that Father was acquitted of the *641 child molestation charge and had raised another child from infancy to adulthood.
The trial court's judgment was supported by the evidence and not the result of the mental gymnastics Mother suggests, as the court awarded the parties joint legal and physical custody of Child where the parties had shared parenting responsibilities during the four previous years. Additionally, any facts that the court may have been aware of before trial were contained within the record upon which the court based its judgment. Therefore, we find that the trial court did not plainly err in failing to recuse itself, as there was no appearance of impartiality. Point I is denied.
Point II
In her second point, Mother claims that the trial court erred in entering Father's parenting plan and in making Father the residential parent because those were misapplications of the law and were unsupported by substantial evidence. Specifically, Mother contends that the trial court inordinately relied upon Father's residence in Shelby County and Mother's move to Palmyra in determining which parenting plan to enter, as that consideration was unsupported under § 452.375.2(7).
Standard of Review
We will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Gaudreau v. Barnes, 429 S.W.3d 429, 432 (Mo. App. E.D. 2014) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).
"[A] trial court's custody determination is afforded greater deference than other decisions ... we grant the trial court broad discretion and do not reweigh the evidence." Thorp v. Thorp, 390 S.W.3d 871, 877 (Mo. App. E.D. 2013). "The trial court determines what is in the best interest of the child and this Court determines whether there is evidence to support that assessment." In re C.H., 412 S.W.3d 375, 381 (Mo. App. E.D. 2013). The designation of a "residential parent" under § 452.375.5(1) is a sub-issue of custody. J.D.W. v. V.B., 465 S.W.3d 82, 86 (Mo. App. E.D. 2015). Where there is conflicting evidence, we will defer to the trial court and affirm even if there is evidence to support a different conclusion; we therefore will only reverse the trial court's judgment when we are left with a firm belief the wrong result was reached. R.S. v. J.S., 457 S.W.3d 389, 392 (Mo. App. E.D. 2015).
Analysis
Here, Mother asserts that the trial court erred in giving undue weight to Mother's move to Palmyra and to Father's residence in Shelby County when it chose to enter Father's proposed parenting plan and designate him as the residential parent. Specifically, Mother claims that the court's consideration of her move to Palmyra was unsupported by § 452.375.2(7). Additionally, Mother claims that the trial court overestimated the probability that she would relocate again and suggests that the court entered Father's parenting plan and designated him as the residential parent because it favored keeping Child in Shelby County and in the Shelby County school district.
Section 452.375.2 specifically states that "[t]he court shall determine custody in accordance with the best interests of the child ... [T]he court shall consider all relevant factors and enter written findings of fact and conclusions of law, including, but not limited to , the following ..." (emphasis added). Among the listed factors that follow is the intention of either parent to relocate the principal residence of the child. Section 452.375.2(7).
Mother contends that the trial court misapplied this factor when it considered *642 her recent move to Palmyra in its determination to adopt Father's parenting plan and designate him as the residential parent, as the move had already occurred. In its judgment, the trial court found that it was in Child's best interest that he have meaningful relationships with both parents. The trial court reasoned that Father's proposed parenting plan was preferred to Mother's because his proposal of joint physical custody would allow Child to maximize the time spent with both parents compared to Mother's request of sole physical custody. Father's parenting plan also proposed he be designated the residential parent and that Child attend school in the Shelby County school district where Father resided.
The trial court further concluded that Father's parenting plan would provide stability and routine for Child, as Father had resided in the Shelby County area his entire life and represented that he intended to stay there indefinitely. This contrasted with Mother, who had relocated twice within the previous year and testified that she would consider a different job if given a better opportunity; the trial court concluded this showed there was a good possibility that Mother might relocate again. The trial court further reasoned that, by adopting Father's parenting plan and designating Father as the residential parent, Child would have the best chance to remain in a stable and consistent home and school setting-which would be in Child's best interest.
Mother contends that the trial court misapplied § 452.375.2(7) by considering her move to Palmyra in determining Child's best interest, as the move had already happened and should not have been considered under that factor. The statute itself states that the court shall consider all relevant factors in determining a child's best interests. Section 452.375.2. Despite the plain language of the statute, Mother seemingly limits what the trial court may consider when making its custody determination.
In this instance, we find that the trial court's judgment is supported by substantial evidence and was not a misapplication of the law. After reviewing the facts of this case, it is clear that the trial court considered all relevant factors in making its custody determination. The trial court examined testimony, the parties' choices and conduct, the circumstances of each party, and other such evidence in determining Child's best interests. Specifically, the court concluded that, under Father's parenting plan, Child would have the best chance to remain in a stable and consistent home and school setting and would allow Child to spend as much time as possible with both parents. The trial court did not solely focus on either party's intent to relocate Child's primary residence; it weighed all relevant factors in determining what was in Child's best interest.
Mother also argues that the trial court gave undue weight to Father's residence in Shelby County, further stating that "[t]he trial court's concentration upon Shelby County is a result of provincialism which is not supported by the areas of inquiry under 452.375." This assertion is speculative, as there is no indication that the trial court chose to enter Father's proposed parenting plan and designate him as the residential parent solely because he resided in Shelby County. We find nothing in the trial court's judgment that hints at such favoritism. Therefore, the trial court's determination that it was in Child's best interest that Father's parenting plan be adopted and that Father be designated the residential parent was supported by substantial evidence. Point II is denied.
Point III
In her third and final point, Mother contends that the trial court erred in *643 awarding Father the income tax exemption for Child in alternating years because that allocation was a misapplication of the law. Specifically, Mother argues that the trial court did not first determine that the presumed child support amount was unjust and inappropriate before awarding the tax exemption to both parties in alternating years.
Standard of Review
In determining an award of child support in any proceeding, the trial court is required to follow a two-step procedure. J.D.W., 465 S.W.3d at 87 (citing § 452.340.8, Rule 88.01, and Woolridge v. Woolridge, 915 S.W.2d 372 (Mo. App. W.D. 1996) ). First, the court must determine the presumed child support amount by accepting the Form 14 calculation of one of the parties or by doing its own. Id. Second, after considering all relevant factors, the court must determine whether the presumed child support amount is unjust or inappropriate. Id.
In light of the trial court's application of this two-step procedure, we review using the Murphy v. Carron standard to determine whether the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, or does not erroneously declare or apply the law. Dodge v. Dodge, 398 S.W.3d 49, 51-52 (Mo. App. W.D. 2013) ; Murphy, 536 S.W.2d at 32.
Analysis
In this case, the trial court found that, pursuant to § 452.340, Rule 88.01, and Form 14, the presumed child support amount calculated by the Form 14 was "just and appropriate." The trial court then awarded Father the income tax exemption for Child in alternating years, reasoning that each parent had nearly equal custody time. Because the trial court's judgment regarding the award of the income tax exemption to Father is contrary to the precedent set by this Court in J.D.W. v. V.B., 465 S.W.3d 82 (Mo. App. E.D. 2015) and Fowler v. Fowler, 504 S.W.3d 790 (Mo. App. E.D. 2016), it misapplied the law and we grant Mother's third point.
Section 452.340 establishes the procedures for determining child support, including the factors to be considered by the trial court. Relatedly, Rule 88.01 establishes the use of Form 14 to calculate the presumed child support amount, and explains when the presumed child support amount may be rebutted.
In J.D.W., this Court stated that the presumed child support amount calculated by Form 14 makes certain assumptions, including that the parent receiving support is also entitled to claim the tax exemption for the children. Id. ; see also Form 14, Assumption 7. As such, the presumed child support amount is, in part, based on the assumption that the parent receiving support also receives the tax exemption for the child(ren). Id. "Under the two-step process set forth in Rule 88.01 and Section 452.340, to deviate from the presumed amount by awarding the tax exemption to the parent paying support rather than the party receiving support, the trial court must first find that the presumed child support amount is unjust and inappropriate." Fowler, 504 S.W.3d at 802 (citing J.D.W., 465 S.W.3d at 87 ) (finding reversible error when trial court awarded the tax exemption to the paying parent without first finding the presumed child support amount unjust and inappropriate).
Here, the trial court found that the presumed child support amount was "just and appropriate," yet it also awarded Father the income tax exemption for Child in alternating years. Father heavily relies on In re Marriage of Eskew , 31 S.W.3d 543, 545 (Mo. App. S.D. 2000) to counter *644 Mother's argument under Point III. However, our Court has expressly noted that, like the Western District, "we also decline to follow Eskew 's approach" in awarding tax exemptions in child custody cases. J.D.W., 465 S.W.3d at 87. Applying J.D.W. and Fowler , we conclude that the trial court misapplied the law in awarding the income tax exemption for Child to Father in alternating years without first finding the presumed child support amount unjust and inappropriate. Point III is granted. On remand, the trial court is directed to recalculate child support consistent with this opinion.
III. Conclusion
The judgment of the trial court is affirmed in part and reversed in part, and we remand for the limited purpose of recalculating child support.
Mary K. Hoff, J., concurs.
Lisa S. Van Amburg, J., concurs.

All references are to Missouri Supreme Court Rules (2016).